## COTTON-TIE COMPANY *v.* SIMMONS.

The owner of patents for improvements in metallic cotton-bale ties, each tie consisting of a buckle and a band, granted no license to manufacture the ties, but supplied the market with them, the words, "Licensed to use once only," being stamped in the metal of the buckle. After the bands had been severed at the cotton-mill, A., who bought them and the buckles as scrap-iron, rolled and straightened the pieces of the bands, and riveted together their ends. He then cut them into proper lengths and sold them with the buckles, to be used as ties, nothing having been done to the buckles. *Held,* that A. thereby infringed the patents.

*Quære,* Would A.'s sale of the buckle, apart from the band, be an infringement of the patents.

APPEAL from the Circuit Court of the United States for the District of Rhode Island.

The facts are stated in the opinion of the court.

*Mr. Samuel A. Duncan* for the appellants.

*Mr. Benjamin F. Thurston* for the appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an appeal by the plaintiffs in a suit in equity from a decree dismissing the bill of complaint. The suit was brought for the infringement of three several letters-patent, — No. 19,490, granted to Frederic Cook, March 2, 1858, for an "improvement in metallic ties for cotton-bales," and extended for seven years from March 2, 1872; reissued letters-patent No. 5333, granted to James J. McComb, as assignee of George Brodie, March 25, 1873, for an "improvement in cotton-bale ties" (the original patent having been granted to Brodie, as inventor, March 22, 1859, and reissued to him April 27, 1869, and extended for seven years from March 22, 1873); and No. 31,252, granted to J. J. McComb, Jan. 29, 1861, for an "improvement in iron

ties for cotton-bales," and extended for seven years from Jan. 29, 1875. They are severally known as the Cook, the Brodie, and the McComb patents. The Cook patent expired March 2, 1879; the Brodie patent, March 22, 1880; and the McComb patent, Jan. 29, 1882. The plaintiffs are the American Cotton-Tie Company, Limited, a British corporation; James J. McComb, administrator of Mary F. McComb, deceased; and the said James J. McComb, Charles G. Johnsen, and Emerson Foote, each in his own behalf and as a copartner in a firm called the American Cotton-Tie Company. The defendants are Simeon W. Simmons and two other persons, doing business as the Providence Cotton-Tie Company. The Cook patent was assigned to McComb March 21, 1872. The Brodie reissue of 1869, with all rights to reissue, renewal, and extension, was assigned to McComb March 19, 1873. On the 22d of June, 1874, McComb assigned to himself, Johnsen, and Foote, who composed the firm called the American Cotton-Tie Company, the Cook patent as extended, and the Brodie patent as reissued in 1869 and as extended. Mary F. McComb became, in 1861, the owner of the McComb patent. She died in 1874, intestate, and McComb was appointed her administrator. On the 1st of March, 1876, the firm called the American Cotton-Tie Company assigned to the corporation called the American Cotton-Tie Company, Limited, the Cook patent as extended, and the Brodie patent as extended and as reissued in 1873. On the same day McComb, individually and as administrator, assigned to the said corporation the McComb patent and its extension.

The bill is in the usual form, and was filed in November, 1876. It alleges that the defendants have made, used, and sold to others to be used, the patented inventions, and, also, metallic ties for cotton bales containing the patented inventions. No defence affecting the validity of the patents sued on is set up in the answer. The only defence pleaded or made is as to infringement.

The corporation plaintiff, since it acquired title to the three patents in March, 1876, has carried on the business of making cotton-bale ties under the patents. The form of tie it has principally made is the form of the McComb patent, which is called the "arrow tie," from the shape of the five-sided hole

cut in the plate of the buckle.    It has not granted any licenses
to make the ties, but has itself supplied the demand for them.
The tie consists of a buckle and a band, all made of metal.
The band goes around the bale, and the two ends of it are con-
fined by means of the buckle.    On each of the buckles which
the corporation has made and put upon the market it has
placed the words " Licensed to use once only," stamped into the
body of the metal.    This practice was also observed by its pred-
ecessor, the copartnership firm.    The tie, consisting of buckle
and band, is purchased by the person who desires to use it to
confine the cotton in the bale, and is placed around the bale on
the plantation or at the cotton-press.    It remains on the bale
until the bale reaches the cotton-mill, and the band of the tie,
which is of hoop-iron, is then cut.    The buckle and the band,
thus free, become scrap-iron, and are sold as such.    The hoop
is too short for the length required for baling, if it were to be
mended by lapping and riveting the two ends at the place of
severance, and to bale with it requires that there should be a
free end which may be confined at the buckle in the process of
baling.    The defendants buy the buckles and severed hoops at
the cotton-mills, as scrap-iron, the hoops, when bought, being
in bundles, bent, and being pieces of unequal lengths, some cut
at one distance from the buckle, and some at another.    The
defendants straighten the old pieces of hoop and roll them by
cold rolling, and punch the ends with holes, and rivet the pieces
together, and form a band by cutting it to the proper length,
which band, with the buckle accompanying it, makes a tie
ready for use.    In using the tie one end of the band is attached
to one end of the buckle by a loop in that end of the band,
and then the band is passed around the bale, and its free
end is slipped, by a loop made in it, through a slit in the
buckle, around the other end of the buckle, while the bale
is under pressure.    When the pressure is removed the expan-
sive force of the compressed cotton holds the looped ends of
the bands in place in the buckle, the looped ends being con-
fined between the bale and the body of the band.    The use of
the arrow tie has been very extensive.    The defendants sell to
others to be used the ties which they so prepare, and do not
themselves bale cotton with them.    Baled cotton is sold in the

United States without tare, that is, the iron of the buckle and the hoop is weighed with the cotton and the bagging, and the whole is sold by weight at the price of the cotton per pound. The scrap-iron consisting of the buckles and cut hoops is sold at one cent and a quarter per pound, while the corporation sells its ties at six cents per pound.

The specification of the Cook patent describes a buckle with a slot cut through one of its end bars, so that the end of the band may be slipped through sidewise instead of being pushed through endwise. The third claim is to " the herein-described ' slot,' cut through one bar of clasp, which enables the end of the tie or hoop to be slipped sidewise underneath the bar in clasp, so as to effect the fastening with greater rapidity than by passing the end of the tie through endwise."

The specification of the Brodie reissue states that his invention " relates to the combination with open-slot ties of metallic bands having their ends free, and held in position by the expansion of the bale." Some of the drawings show an open slotted link or buckle in connection with a band, and the specification states that the ends of the band are " turned under the link and held in position by the pressure exerted by the expansion of the bale." It adds: " In the latter mode of use the slack may be readily taken up by forming the loop in the iron at the moment of making the fastening, and passing the end thus looped through the opening in the side of the link. The band is thus slipped sidewise through the opening into the slot instead of thrusting it through endwise." The third, fourth, and fifth claims of the Brodie reissue are in these words: " 3. The combination of an open slot for introducing the band sidewise with a link having a single rectangular opening for holding both ends of a metallic band, and the band. 4. An open slotted link, when combined with metallic bands, the ends of which are turned under the link and held in position by the expansion of the bale. 5. The method of baling cotton with metallic bands, and taking up the slack of the band by bending the same at any desired point into the form of a loop, and passing such loop sidewise through an open slit into the slot intended to receive it and over the bar of the clasp intended to hold it."

The specification of the McComb patent states that the nature of his invention " consists in the use of a peculiarly shaped buckle as a fastening or tie for the ends of the iron hoops." It says that the " buckle is a piece of wrought-iron or other metallic substance, about the eighth of an inch thick, an inch and three-quarters wide, and two inches long (the size being modified to suit the width of the hoop used), with an oblong hole or aperture cut or punched through the centre ; " that the five sides of the plate of the buckle are equal and parallel ; and that the two largest of the five sides of the oblong hole are of equal length, and are equal in length to the width of the hoop. The drawings show the two sides forming the arrow part as of equal length. The slit or slot is cut through one of the sides of the plate opposite one of the two longest sides of the central hole, so that one of the loops of the hoop stretches across and covers the slit. The claim of the patent is this : " Forming a link or tie with an oblong aperture, one end of which is arrow-shaped, or rather presents two sides of an equilateral triangle, the design of this arrow-shaped end being not only to force the loop or bend of the hoop over the slot, which it does with unerring precision when the bale expands after being released from the press, but, also, to secure an equal bearing upon the separated parts of the slotted side of the tie."

A buckle without a band will not confine a bale of cotton. Although the defendants use a second time buckles originally made by those owning the patents and put by them on the market, they do not use a second time the original bands in the condition in which those bands were originally put forth with such buckles. They use bands made by piecing together severed pieces of the old bands. The band in a condition fit for use with the buckle is an element in the third claim of the Brodie reissue. That claim is for a combination of the open slot arranged to allow of the sidewise introduction of the band, the link or buckle with the single rectangular opening arranged so as to hold both ends of the band, and the band. The old buckle which the defendants sell has the slot of Cook, and the slot and rectangular opening of Brodie, and the slot and arrow-shaped opening of McComb. Whatever right the defendants could acquire to the use of the old buckle,

they acquired no right to combine it with a substantially new band, to make a cotton-bale tie. They so combined it when they combined it with a band made of the pieces of the old band in the way described. What the defendants did in piecing together the pieces of the old band was not a repair of the band or the tie, in any proper sense. The band was voluntarily severed by the consumer at the cotton-mill because the tie had performed its function of confining the bale of cotton in its transit from the plantation or the press to the mill. Its capacity for use as a tie was voluntarily destroyed. As it left the bale it could not be used again as a tie. As a tie the defendants reconstructed it, although they used the old buckle without repairing that. The case is not like putting new cutters into a planing-machine in place of those worn out by use, as in *Wilson* v. *Simpson*, 9 How. 109. The principle of that case was, that temporary parts wearing out in a machine might be replaced to preserve the machine, in accordance with the intention of the vendor, without amounting to a reconstruction of the machine.

The defendants contend that they do not combine the band with the buckle, and do not infringe the third claim of the Cook patent, or the third, fourth, and fifth claims of the Brodie reissue, or the claim of the McComb patent, because they do not bale cotton with the tie. But they participate in combining the open slot, the buckle, and the band, the whole being so arranged that the ends of the band can be turned under the buckle and held in position by the expansion of the bale, and that the slack of the band can be taken up by bending the band into the form of a loop, and passing the loop sidewise through the open slit into the hole and over the holding-bar of the plate. They sell the tie having the capacity of use in the manner described, and intended to be so used. Only the bale of cotton and the press are needed to produce the result set forth in the specifications of the patents, and without the bale of cotton and the press the tie would not be made or sold. The slot through the end bar of the buckle in the Cook patent is of no practical use apart from the band and the bale of cotton, and the same thing is true of the link of the McComb patent with its arrow-shaped aperture; and although a person

who merely makes and sells the buckle or link in each case
may be liable for infringing those patents, he is so liable only
as he is regarded as doing what he does with the purpose of
having the buckle or link combined with a band and used to
bale cotton.   Because the defendants prepare and sell the
arrow tie, composed of the buckle or link and the band, intend-
ing to have it used to bale cotton and to produce the results
set forth in the Cook and the McComb patents, they infringe
those patents.   *Saxe* v. *Hammond*, 1 Holmes, 456; *Bowker* v.
*Dows*, 3 Banning & Arden, 518.   We do not decide that they
are liable as infringers of either of the three patents merely
because they have sold the buckle considered apart from the
band or from the entire structure as a tie.

We are, therefore, of opinion that the defendants infringed
the third claim of the Cook patent, the third, fourth, and
fifth claims of the Brodie reissue, and the claim of the
McComb patent.

> *Decree reversed, with costs, with directions to enter a decree
> for the plaintiffs, in respect to those claims, for an account
> of profits and damages, as prayed in the bill, and to take
> such further proceedings in the suit as may be in conformity
> with the opinion of this court.*