## HUGHES TOOL CO. v. OWEN et al.
### No. 10067.

Circuit Court of Appeals, Fifth Circuit.

Dec. 5, 1941.

Jesse R. Stone, of Houston, Tex., Geo. I. Haight, of Chicago, Ill., and J. M. Wagstaff, of Abilene, Tex., for appellant.

Carl P. Springer, of Abilene, Tex., for appellees.

Before HUTCHESON and HOLMES, Circuit Judges, and DAWKINS, District Judge.

HUTCHESON, Circuit Judge.

The suit was for damages for, and an injunction against, the infringement of two patents, Scott and Wellensiek, No. 1,647,-753, and Fletcher, No. 1,856,627.[1] Each relates to the teeth on drill bits. The validity of each patent, and that both patents are for inventions which contributed materially to the well drilling art, is conceded. Plaintiff appellant, a manufacturer of drilling bits and other devices used in drilling for oil, manufactures, under the patents in suit, bits having teeth thereon, made and arranged in accordance with their teaching. These bits are marked property of Hughes Tool Company and are not sold but are leased[2] to drilling contractors. Defendants appellees are father and son operating a welding shop at Eastland, Texas, as a partnership. The actions of defendants which are charged to be infringing, consist

[1] "The disclosures of the patents and their contribution to the art are briefly and accurately stated in a stipulation as follows:

"1. The patent to Scott & Wellensiek, No. 1,647,753, discloses the formation of widely spaced circumferential rows of long and chisel-shaped teeth on cutters and then mounting the cutters on a bit head so that when the cutters rotate the teeth deliver a downward chisel-like stroke on the formation being drilled. The rows of teeth are spaced widely apart so as to obtain wide clearance and allow for the displacement of the material, being drilled into the spaces between the teeth, by the flushing fluid. These teeth not only result in the better cutting of the material but they assure the turning of the cutter as the bit head rotates upon the bottom and enables the driller to cut soft formations as well as hard. The driller can thus drill a varied formation without pulling the bit from the hole when soft formation is encountered, as was previously necessary. By the use of drills embodying the inventions of the Scott & Wellensiek No. 1,647,753 the time consumed in drilling of a well was cut down to about one-fourth and the number of sets of drills employed in drilling a well was also cut down to about one-fourth of the previous number. The invention is meritorious and contributed a marked advance to the drilling art.

"2. The Fletcher No. 1,856,627 discloses the placing of the teeth longitudinally of the cutter in staggered relation, so that they do not line up longitudinally of the cutters. By staggering the teeth longitudinally of the cutter, there are fewer teeth in contact with the bottom of the hole at any one time than where the teeth were arranged in rows longitudinally of the cutter and thus better penetration of the formation is obtained due to the fact that a fewer number of the teeth have to support the full weight of the bit and drill stem. This also prevents the tracking of the teeth upon the bottom of the hole, preventing the formation of depressions upon the well bottom. Further, the teeth are formed of uniform size from base to apex of the cutter, thus obtaining better cutting effect especially toward the apex of the cone where they were previously made smaller and shorter. The uniformity of size of teeth made possible by the Fletcher invention, results in more even wear of all teeth from the base to the apex of the cutter and thus prolongs the life of the bit. The Fletcher patent was a material improvement to the drilling art."

[2] Each one of the bits was marked "property of Hughes Tool Company," each delivery ticket bears a legend that when the original cutter teeth or bearing have served their useful life the user will surrender the bits to Hughes Tool

in receiving used bits from drillers and rebuilding the teeth thereon to their original shape with an acetylene torch and welding rod. When defendants have finished rebuilding the teeth, the result is necessarily one which comes within Claims 2, 3, 4, and 5, of the Scott and Wellensiek patents and Claims 1, 2, and 3, of the Fletcher patent, for the sole purpose of working on them is to restore them to the patented form. The issue decided below and to be decided here is whether what the defendants do to the teeth is a permissible repair, or is infringing reconstruction within' the authorities. There is no dispute as to what the defendants do to the teeth. It is to add new material to the worn teeth, shaping the new teeth just as the original teeth have been shaped. The only dispute of fact is as to whether, as defendants' claim, they repair or sharpen green bits, that is, bits which though worn are still capable of further service, or whether they are engaged in rebuilding completely worn out bits, that is, bits which can no longer be used. On this point testimony was given by Owens, one of the defendants in a sequestration suit for the bits, brought in the state court. "Q. At least the bit is worn so that it would no longer cut, or it would not be given to you?" "A. I am sure that is the reason it is brought to me."

On the trial of this case the defendant, admitting that he had so testified, and that the testimony was true, insisted that the only bits they had worked upon were green bits, that is, bits which, though the teeth were ⅓ to ½ worn away, still had some cutting life or use in them. The District Judge took the view that this was so and stating in his opinion that it was in evidence during the trial without any substantial contradiction that defendants worked only on green bits, found that this was a permissible repair and not an infringing reconstruction. Here appellants not only challenge the fact finding on which this conclusion rests, but also, assuming the correctness of the fact finding, challenge the conclusion that work on so called green bits is not infringement. They challenge the fact finding upon the testimony of Owens, shown above. They challenge the conclusion that there was no infringement but only permissible repair on

these grounds: (1) The doctrine is without application here because the bits were not sold but were merely leased for use for their life, to those from whom defendants got them; (2) and this is the main contention, the doctrine of repair has no application here for in retipping and rebuilding the teeth defendants built the very thing the patents cover, producing the structure of the patents from a used structure which had been altered from the invention by wearing down and away, and therefore there was not a repair but reconstruction. For their position, plaintiffs relied primarily on Southwestern Tool Company v. Hughes Tool Company, 10 Cir., 98 F.2d 42, in which the Scott and Wellensiek patent, and on Hughes Tool Co. v. United Machine Co., D.C., 35 F. Supp. 879, in which both the Scott and Wellensiek and the Fletcher patents had been held infringed by rebuilding teeth on bits of plaintiffs manufacturer. The District Judge in a carefully reasoned opinion distinguished those cases on the ground that in both of them other patents relating to the bearing upon which the cutters were mounted were also held infringed. He thought too that this case was distinguished by the fact that the defendants did not, as the defendants in those cases did, purchase and sell bits, but merely rebuilt them for drilling contractors. He finally distinguished them on the ground that the cones or cutters, the teeth of which were rebuilt, were worn out, while here, only the teeth were worn and what was done to them was not a reconstruction but a repair. He thought this case ruled by Wilson v. Simpson, 9 How. 109, 13 L.Ed. 66; Morrin v. Robert White Engineering Works, 2 Cir., 143 F. 519; Goodyear Shoe Machinery Co. v. Jackson, 1 Cir., 112 F. 146, 55 L.R.A. 692, all of those cases holding that there is a debatable ground, the precise limits of which cannot be determined in advance, but must be determined on the facts of each case, between the bounds of legitimate repair and infringing reconstruction.

Appellant, not at all disputing this general principle or the authority of the cited cases, insists that they are not on their facts, in point, that what was held repair there was not, as here, rebuilding of the single thing the patent is for, here the

---

Company upon request, and it is undisputed that plaintiff has a pickup service which is constantly engaged in reclaiming and gathering up these used bits, having

recovered 95% of bits leased in 1940 in spite of their wide distribution in many oil fields.

teeth, but the mere repair of some element in or part of, but not the whole of, the patented device.

They point out that, in the Wilson case, the repaired cutters were merely one element of the whole invention; in the Goodyear case the patent was for a combination composed of many parts, the replacement held to be repair was of one of these parts; in the Morrin case, the holding was not that it was permissible to furnish new sets of tubes but that the repair of a single boiler tube or so would not be an infringement. They insist that in its discussion, the Goodyear case aptly presents and supports appellant's point. There, citing the Wilson-Simpson case to the point that the combination patent still exists though some of its parts need replacement, and that such replacement is therefore a repair and not a reconstruction, the court says [112 F. 150, 55 L.R.A. 692]: "When the patent is for a single thing, like a knitting needle, for example, and not for a device or machine composed of several things or elements combined, it is obvious that the replacement of an old needle by a new one in a knitting machine is not repair, but a reproduction of the patented thing". "When the patent is for a device embracing the combination of several elements, a purchaser will infringe by reconstructing the device after it has fulfilled its purpose and is substantially destroyed." Citing American Cotton-Tie Co v. Simmons, 106 U.S. 89, 1 S.Ct. 52, 27 L.Ed. 79. "Again, where the subject of the patent was an electric lamp, and the invention resided in the discovery that an attenuated carbon filament, * * * it is plain that, when the filament is destroyed, the lamp is destroyed, and that to replace the old filament with a new one, is substantially the making of a new lamp."

In the case at bar, appellant says, the teeth themselves, in their relation to each other, are the entire patented device, and it is impossible to rebuild them without reconstructing the patent as a whole, and under the teachings of the very cases the District Judge relied on, there was infringement. Appellant also urges that those were cases of the sale of patented devices, whereas here the devices are leased only for the life of the tool.

We agree with appellant that what was done here was not merely repairing a part of an invention consisting of many parts, as in the Wilson-Simpson case, the Goodyear and the Morrin cases, but a reconstruction of the invention itself as in American Cotton-Tie Co. v. Simmons, 106 U.S. 89, 1 S.Ct. 52, 27 L.Ed. 79; Davis Electrical Works v. Edison Electric Light Co., 1 Cir., 60 F. 276; Southwestern Tool Co. v. Hughes Tool Company and Hughes Tool Co. v. United Machine Co., supra, and that there was infringement wholly without regard to the question of whether the tools were sold or merely leased. But we agree with it also that there was no selling here but a leasing, and that under the terms of the lease, the licensee had no right, and therefore defendants had none, to retip or rebuild the teeth.

On the issue of injunction the District Judge, in addition to his finding that none should issue because there was no infringement, found that defendants ceased doing the acts of which they were accused shortly prior to the filing of the complaint and have assured plaintiffs that they would not repeat them, and that on this ground too, an injunction should not issue. Appellant, insisting that injunction is its only protection and that the mere assurances by defendants that they will not repeat the offenses will give it no protection, points to the facts of the case showing the troubles and difficulties it has had with defendants under these practices, and insists that it is entitled to an injunction.

We think it is. Defendants apprehension that if the injunction is granted they could not work for anybody, even to do repairs, is not entitled to consideration if what they wish to do is infringement under the law, for to prevent them from doing that is the whole purpose of the suit. Neither is it so entitled, if they mean by it that they will be prevented from doing legitimate repairs, for the injunction will be drawn within the scope of the issues and it will prohibit them from doing, not permissible repairing, but the things they have been doing, reconstructing the patent itself by rebuilding the teeth.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

Reversed and remanded.