**HIGH VOLTAGE ENGINEERING CORP.**

**v.**

**POTENTIALS, INC.**

**Civ. A. No. A–71–CA–93.**

United States District Court,
W. D. Texas,
Austin Division.

April 10, 1974.

Dan Moody, Jr., H. Lee Godfrey, Austin, Tex., for plaintiff.

James H. Keahey, Austin, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

ROBERTS, District Judge.

This cause having been presented for trial and heard by the Court, sitting without a jury, the Court now enters this Memorandum Opinion and Order, setting forth its findings of fact and conclusions of law. Plaintiff holds the patent (Letters Patent No. 3,308,323) for an invention in inclined-field acceleration tubes. These tubes, used in scientific research, are sold almost exclusively to large universities and research institutions. Defendant is engaged in the business of servicing inclined-field acceleration tubes. In the course of this servicing, Defendant disassembles the tube, resurfaces the parts, and reassembles the tube. The effect of Defendant's "repair" is to convert a tube which can no longer hold voltage necessary for effective operation into a tube that works as well as new, but at a substantially lower cost than that of a new tube. Plaintiff contends this is an infringement of its patent under 35 U.S.C. § 271. The primary issue in the case is whether Defendant's servicing constitutes a "repair" or "reconstruction" of the tubes. If the servicing is a "repair," there is no patent infringement. If, on the other hand, the servicing is a "reconstruction,"

Defendant has infringed Plaintiff's patent by engaging in an impermissible "making" of the patented product.

Decisions on the "repair"—"reconstruction" question are limited. In the leading case of *Wilson v. Simpson*, 50 U.S. (9 How.) 109, 13 L.Ed. 66 (1850), the Supreme Court stated that,

> . . . if, as a whole, it (the patented device) should happen to be broken, so that its parts could not be re-adjusted, or so much worn out as to be useless, then a purchaser cannot make or replace it by another, but he must buy a new one. The doing of either would be entire reconstruction.

*Id.* at 121–22.

The leading decisions of the Supreme Court generally permit the repair or replacement of spent or worn-out parts (such as the installation of new cutters in a planing machine, *Wilson v. Simpson, supra;* the selling of oval toilet paper rolls designed to fit a patented toilet paper dispenser, *Morgan Envelope Co. v. Albany Perforated Wrapper Paper Co.*, 152 U.S. 425, 14 S.Ct. 627, 38 L.Ed. 500 (1894); the selling of gelatine necessary to the operation of a copying machine, *Heyer v. Duplicator Mfg. Co.*, 263 U.S. 100, 44 S.Ct. 31, 68 L.Ed. 189 (1923); the selling of canvass top replacements for a patented automobile convertible top, *Aro Mfg. Co. v. Convertible Top Co.*, 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961)).

When, however, a patented device has fulfilled its purpose and completed its useful life, and it becomes ". . . so much worn as to be inoperative, or has been broken," so that "the machine no longer exists," the restoration becomes an impermissible "reconstruction." *Wilson v. Simpson, supra,* 50 U.S. at 123. For example, the restoration of ties used to hold together bales of cotton was held to be a "reconstruction" where the tie was intended to be used only once, and bands from more than one device had to be riveted together to create a new tie. *American Cotton*

*Tie Co. v. Simmons,* 106 U.S. 89, 1 S.Ct. 52, 27 L.Ed. 79 (1882).

The present case is extremely close. Defendant's business consisted of taking tubes which would no longer hold the required voltage necessary for effective operation, resurfacing the parts, and reassembling the tube, using only the original materials, and taking care that each part was put back in its original position. The parts themselves account for a relatively small fraction of the cost of the tube and are, in themselves, simple unpatented parts.

■ While we recognize that "there is no legally recognizable or protected 'essential' element, 'gist' or 'heart' of the invention in a combination patent," *Aro Mfg. Co. v. Convertible Top. Co., supra,* 365 U.S. at 345, 81 S.Ct. at 604, we feel it appropriate to note that the essential advance in the art of Plaintiff's patented inclined-field acceleration tube is the inclination of the electrodes to minimize the drag on particles being accelerated through the tube. This inclination is in no way altered or affected by use of the tube. When a tube comes to Defendant for servicing, the configuration of the tube is no different than when the tube was new. The need for servicing arises not from any physical change in the configuration of the tube or in the nature of its components, but from the deterioration of the surfaces of the interior components of the tube. This deterioration is characterized by Defendant as a "dirtying" of the internal components.

■■ After hearing the evidence and examining the exhibits in the case, we find that Defendant's activities are properly to be classified as a "repair" rather than a "reconstruction" of the inclined-field acceleration tube. The components of the tube are never truly "worn out." Rather, they become coated with deposits of material and/or scarred by violent sparking during the acceleration process. The essence of Defendant's business is restoring the surfaces of these internal components by cleansing, buffing and annealing. There is no "reconstruction" such as was involved in the remaking of cotton bale ties intended for one-time use in *American Cotton Tie Co. v. Simmons, supra.* The tube here involved did not have "a single-shot function and purpose for a one-time use." *Fromberg, Inc. v. Thornhill,* 315 F.2d 407, 413 (5th Cir. 1963). Rather, the tube was intended for prolonged use. Unlike the cotton bale ties, the tube's usefulness was never willfully terminated by the consumer. The tube as a whole never became "spent." "In order to call the monopoly, conferred by the patent grant, into play for a second time, it must, indeed, be a second creation of the patented entity, as, for example, in *Cotton Tie Co. v. Simmons, supra.*" *Aro Mfg. Co. v. Convertible Top Co., supra,* 365 U.S. at 346, 81 S.Ct. at 604. The fact that Plaintiff merely finds it more convenient, or more profitable, to invoke its patent rather than enter into the competitive field of cleaning, resurfacing and repairing tubes does not justify an extension by this Court of Plaintiff's patent to the activity here challenged. " 'The (patent) monopolist cannot prevent those to whom he sells from * * * reconditioning articles worn by use, unless they in fact make a new article.' " *United States v. Aluminum Co. of America,* 148 F.2d 416, 425 (2d Cir. 1945), *quoted in Aro Mfg. Co. v. Convertible Top Co., supra,* 365 U.S. at 343, 81 S.Ct. at 603. We conclude that Defendant's activities do not constitute an impermissible "reconstruction" of the patented product and that, consequently, Defendant has not infringed Plaintiff's patent. It is accordingly

Ordered, adjudged and decreed that all relief sought by Plaintiff be, and hereby is, denied. This Memorandum Opinion and Order shall constitute findings of fact and conclusions of law. The Clerk shall enter judgment forthwith.