**WELLS MFG. CORP., a Wisconsin Corporation, Plaintiff-Appellee,**

v.

**LITTELFUSE, INC., a Texas Corporation, Defendant-Appellant.**

**No. 76–1087.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1976.
Decided Nov. 17, 1976.

Russell E. Hattis, Chicago, Ill., Ira Milton Jones, Milwaukee, Wis., for defendant-appellant.

* Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

1.  35 U.S.C. § 271(c) provides:

(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in

Andrew O. Riteris, Milwaukee, Wis., for plaintiff-appellee.

Before SPRECHER and WOOD, Circuit Judges, and GRANT,* Senior District Judge.

WOOD, Circuit Judge.

In this patent case, Plaintiff-Appellee Wells Mfg. Corp. (hereinafter referred to as "Wells") brought suit against Defendant-Appellant Littelfuse, Inc. (hereinafter referred to as "Littelfuse") for a declaratory judgment that a patent owned by Littelfuse is not being contributorily infringed[1] by Wells' sale of certain brake switches. No question concerning the validity of the patent is raised on appeal. The sole issue on appeal is whether the manufacture and sale by Wells of replacement brake switches in the aftermarket constitutes permissible "repairs" of appellant's patented structure and therefore does not constitute contributory infringement or whether such sales result in the "reconstruction" of the patented structure and thereby constitutes contributory infringement.

The district court granted Wells' Motion for Summary Judgment and entered a declaratory judgment that the replacement of brake switches constituted permissible "repair."

For the following reasons, this court agrees with the lower court's holding and believes that the judgment on behalf of Wells should be affirmed.

I

Briefly, the facts are as follows.

The patentee of the patent in suit, United States Patent No. 3,257,522, is Andrew F. Raab. Application for the patent (hereinafter referred to as the "Raab patent") was practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

347

filed August 9, 1962, and the patent was issued on June 21, 1966. Assignment of the patent by Raab to Littelfuse was recorded in the Patent Office on September 9, 1965. The parties have agreed by stipulation that only claim 1 is in issue. (Stipulation 1.)

Briefly, claim 1 of the Raab patent[2] describes a mechanism for illuminating the stoplight on the rear of an automobile when the driver applies the brakes. In order to understand the patent in greater detail, a brief description of the braking system of an automobile is first necessary.

Automobiles are conventionally provided with a brake mechanism such as a power brake mechanism or a mechanically operated hydraulic brake mechanism. The brake mechanism is activated by the driver of the automobile when he depresses the brake pedal. Connected respectively to the brake pedal and brake mechanism are a pair of telescoping link members having normally separate but engageable surfaces. The surfaces of the link members are engaged and the brake mechanism is thereby activated when the member connected to the brake pedal is moved at least a predetermined distance by depression of the brake pedal by the driver of the automobile.

As indicated above, claim 1 describes a device for the illumination of stoplights on the rear of a car only when the brake pedal is depressed with sufficient force to activate the brake mechanism. This is accomplished under the terms of claim 1 as follows: A normally open switch is carried on the exterior of one of the link members. A switch actuator is carried on the exterior of the other link member. A spring is connected between the link members for normally separating the engageable surfaces of the members and allowing the switch to remain in an open position. The spring has sufficient strength to prevent engagement of the engageable surfaces of the link members until pressure equivalent to the predetermined pressure required to activate the brake mechanism is applied by the brake pedal. When the brake pedal is depressed sufficiently to overcome the spring, the telescoping members are moved to engage the engageable surfaces causing the switch to close, whereupon substantially simultaneous operation of the brake mechanism and illumination of the stoplight occurs.

Littelfuse manufactures and sells brake switches which include the following elements described in claim 1: A normally open switch carried on the exterior of a link member; a switch actuator carried on the exterior of the other link member; and a spring connected between the link members. Littelfuse sells brake switches as original equipment to Ford Motor Company and American Motors Corporation. Littelfuse also sells brake switches as replacement parts in the aftermarket to distributors and dealers of automotive replacement parts for use in Ford and American Motors automobiles.

2. Claim 1 provides as follows:

1. In an automotive vehicle having a brake mechanism requiring at least a predetermined pressure to be applied thereto for applying the brakes, a brake pedal for applying pressure to the brake mechanism, a stoplight for indicating the operation of the brake mechanism, a pair of relatively movable members connected respectively to the brake mechanism and the brake pedal and having normally separated but engageable surfaces which are engaged when the member connected to the brake pedal is moved at least a predetermined distance by depression of the brake pedal for moving the member connected to the brake mechanism for applying pressure to the brake mechanism, the improvement comprising, a normally open switch carried by one of said members and arranged exteriorly and out of the confines of said members for controlling the illumination of the stoplight, a switch actuator arranged exteriorly and out of the confines of said members and operated by the other of said members, and a spring operatively connected between said members for normally separating the engageable surfaces thereof and allowing the switch to open, said spring having sufficient strength to prevent engagement of the engageable surfaces until pressure equivalent to the predetermined pressure required to operate the brake mechanism is applied by the brake pedal, depression of the brake pedal with at least such pressure relatively moving said members against the action of the spring to engage the engageable surfaces thereof, to close the switch and to move both of said members to operate the brake mechanism.

Wells manufactures and sells brake switches as replacement parts for Ford automobiles.[3] The Wells brake switch contains the same three elements with the identical relationship to the link members as are included in the Littelfuse switch. The parties stipulated in part that:

> . . . the three . . . elements of the Wells brake switch function in an identical manner to the three corresponding elements recited in claim 1 of the Raab patent, and that the other elements referred to in the preamble are not supplied by Wells at any time and at times remain as original equipment on the Ford automobile when the commercial Littel-

fuse brake switch is replaced by the Wells brake switch. (Stipulation 4.)

The district court granted Wells' Motion for Summary Judgment and held that the Raab patent was not contributorily infringed by Wells' manufacture and sale of brake switches. The district court ruled that claim 1 is a combination claim in which the arrangement, relationship, and cooperation of the switch, its actuator, and the spring with the telescoping linkage is the improvement. Thus, the district court reasoned that the brake switch manufactured by Wells is a separate unpatented element of a combination patent which includes the link as well as the switch. Under the doctrine

**3.** Stipulation Exhibit 2 shows, in substance, the basic constructional details of the brake switches manufactured by Wells:

Stipulation Exhibit 3 relates the elements of claim 1 of the Raab patent to Wells' brake switch as used in a Ford automobile braking system:

| | |
|---|---|
| A. In an automotive vehicle having a brake mechanism requiring at least a predetermined pressure to be applied thereto for applying the brakes, a brake pedal for applying pressure to the brake mechanism, a stoplight for indicating the operation of the brake mechanism, | The brake mechanism, brake pedal and stoplight of a Ford automobile to which the Wells switch is designed to be connected. |
| B. a pair of relatively movable members connected respectively to the brake mechanism and the brake pedal, | Brake pushrod 2 and brake pedal arm connecting rod 4. |
| C. and having normally separated but engageable surfaces which are engaged when the member connected to the brake pedal is moved at least a predetermined distance by depression of the brake pedal for moving the member connected to the brake mechanism for applying pressure to the brake mechanism, | The surface 2a of brake pushrod 2 and the surface 4a of the brake pedal arm connecting rod 4. |
| D. the improvement comprising: a normally open switch carried by one of | Switch 6 attached to housing 8 to which bracket or clevis 10 is connected, |
| said members and arranged exteriorly and out of the confines of said members for controlling the illumination of the stoplight, | the switch 6, housing 8 and bracket or clevis 10 being carried by the brake pedal connecting rod 4. |
| E. a switch actuator arranged exteriorly and out of the confines of said members and operated by the other of said members, | Switch actuator pushplate 12 engaged initially by the nose portion 2b of the brake pushrod 2 or when the brake pedal is initially depressed to move the brake pedal arm connecting rod 4 to the left toward and against the edge 10a of an opening in the bracket or clevis 10 receiving the brake pedal arm connecting rod 4. |
| F and a spring operatively connected between said members for normally separating the engageable surfaces thereof and allowing the switch to open, said spring having sufficient strength to prevent engagement of the engageable surfaces until pressure equivalent to the predetermined pressure required to operate the brake mechanism is applied by the brake pedal, depression of the brake pedal with at least such pressure relatively moving said members against the action of the spring to engage the engageable surfaces thereof, to close the switch and to move both of said members to operate the brake mechanism.* | Spring 14, sandwiched between wall 8a and head 16a of switch actuator 16 bearing against pushplate 12, keeps the pushplate 12 against the pushrod nose portion 2b to retain the brake pedal connecting rod 4 out of engagement with the pushrod surface 2a, until the force on the brake pedal reaches a value which overcomes the force of the spring 14. (The force on the brake pedal connecting rod is to the left as viewed on drawing No. 3, and this force is applied to the bracket or clevis 10 which pulls housing wall 8a against spring 14.) Then, the assembly of the switch 6, housing 8, bracket or clevis 10 and the brake pedal arm connecting rod 4 move to the left, bringing the surface 4a of the brake pedal connecting rod 4 against the surface 2a of the brake pushrod 2. This movement causes switch actuator 16 to depress the spring arm 6a, closing the contacts 6b and 6c, and move the brake pushrod 2 to the left to operate the brake mechanism connected thereto. |
| | * In the cited stipulation, the parties unintentionally misquoted a portion of the text of claim 1. We have corrected the typographical error. |

of *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961), the Court concluded that replacement of the brake switch alone is permissible "repair" rather than an infringing reconstruction.

Littelfuse contends that the district court was in error in failing to find that manufacture and sale by Wells of its brake switch constituted contributory infringement of claim 1. Littelfuse argues that the district court improperly treated the telescoping link members recited in the preamble portion of claim 1 as part of the combination of patented elements. Littelfuse further asserts that claim 1 must be interpreted in light of the amendment history of the patent. According to Littelfuse, the file wrapper (Stipulation Exhibit 4) demonstrates that the Patent Office, after a series of claim amendments, granted claim 1 with the understanding that the brake switch per se was the patentable improvement and that the other elements referred to were merely old or environmental elements. In support of its position, Littelfuse cites the fact that the claim was written as a *Jepson* type claim with the environmental or old elements separated from the patentable portion of the claim. Since the movable link members were placed in the preamble of claim 1 in response to an objection by the Patent Office examiner, Littelfuse asserts that the link members are environmental elements only. Littelfuse further asserts that the recital of relationships between the

elements of the brake switch to the link members does not convert the link members into part of the patented claim. Thus, according to Littelfuse, the brake switch manufactured and sold by Wells constitutes the entire patented entity. Under the doctrine of *Aro Mfg. Co., supra,* Littelfuse contends that Wells is guilty of contributory infringement.

Wells argues in response that the patented combination includes a unique or novel relationship between the switch, switch actuator, and spring and the link members. Wells relies upon 37 C.F.R. § 1.75(e),[4] to further support the proposition that the link members are part of the patented combination. Wells asserts that since under 37 C.F.R. § 1.75(e) the relationship of the elements of the brake switch to the link members is enumerated in the improvement portion of claim 1, the link members form part of the patented combination. Wells contends that the amendment history and the specification of claim 1 support this position. Since it manufactures and sells only the brake switch and not the link members, Wells argues that replacement of the brake switch in the aftermarket constitutes permissible "repair" under the rule of *Aro Mfg. Co.*

## II

It is useful to first examine the meaning underlying the distinction between "repair" and "reconstruction" for a combination patent.[5] As the Court stated in *Wilbur-Ellis*

---

**4.** 37 C.F.R. § 1.75(e) provides:

(e) Where the nature of the case admits, as in the case of an improvement, any independent claim should contain in the following order, (1) a preamble comprising a general description of all the elements or steps of the claimed combination which are conventional or known, (2) a phrase such as "wherein the improvement comprises," and (3) those elements, steps and/or relationships which constitute that portion of the claimed combination which the applicant considers as the new or improved portion.

**5.** Wells admitted for purposes of the present motion that it sells its brake switch "knowing the same to be especially made or especially adapted for use in, and not to be a staple article or commodity of commerce suitable for sub-

stantial use other than, the braking system of a Ford automobile which . . . is considered to contain all of the elements recited in claim 1 of Raab." (Stipulation 5.) Thus, Wells' manufacture and sale of the brake switch under the terms of Stipulation 5 constitutes contributory infringement under the terms of 35 U.S.C. § 271(c) "only if, such a replacement by the purchaser himself would in itself constitute a *direct* infringement under § 271(a), for it is settled that if there is no *direct* infringement of a patent there can be no *contributory* infringement." *Aro Mfg. Co.*, 365 U.S. at 341, 81 S.Ct. at 602. Since contributory infringement is defined in terms of direct infringement, the determinative question in this case is whether the car owner would infringe the Raab patent by replacement of the Littelfuse brake switch

*Co. v. Kuther,* 377 U.S. 422, 424, 84 S.Ct. 1561, 1563, 12 L.Ed.2d 419 (1964):

. . . The idea of "reconstruction" in this context has the special connotation of those acts which would impinge on the patentee's right "*to exclude others from making,*" 35 U.S.C. § 154, the article. As stated in *Wilson v. Simpson,* 9 How. 109, 123, [13 L.Ed. 66], " . . . when the material of the combination ceases to exist, in whatever way that may occur, the right to renew it depends upon the right to make the invention. If the right to make does not exist, there is no right to rebuild the combination." On the other hand, "When the wearing or injury is partial, then repair is restoration, and not reconstruction." *Ibid.* Replacing worn-out cutting knives in a planing machine was held to be "repair," not "reconstruction," in *Wilson v. Simpson, supra.* Our latest case was *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, [81 S.Ct. 599, 5 L.Ed.2d 592], which a majority of the Court construe as holding that it was not infringement to replace the worn-out fabric of a patented convertible automobile top, whose original manufacture and sale had been licensed by the patentee.

Similarly, the Court in *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 346, 81 S.Ct. 599, 604, 5 L.Ed.2d 592 (1961) stated:

The decisions of this Court require the conclusion that reconstruction of a patented entity, comprised of unpatented elements, is limited to such a true reconstruction of the entity as to "in fact make a new article," *United States v. Aluminum Co. of America, supra,* at 425, after the entity, viewed as a whole, has become spent. In order to call the monopoly, conferred by the patent grant, into play for a second time, it must, indeed, be a second creation of the patented entity, as, for example, in [*American*] *Cotton-Tie Co. v. Simmons* [106 U.S. 89, 1 S.Ct. 52, 27

L.Ed. 79], *supra.* Mere replacement of individual unpatented parts, one at a time, whether of the same part repeatedly or different parts successively, is no more than the lawful right of the owner to repair his property. Measured by this test, the replacement of the fabric involved in this case must be characterized as permissible "repair," not "reconstruction."

This court in *TSC Industries, Inc. v. International Harvester Co.,* 406 F.2d 53 (7th Cir. 1968), referred to Justice Harlan's dissenting opinion in *Aro Mfg. Co.* as explaining the Court's holding in that case:

The holding of the Court in *Aro* is explained by Justice Harlan in his dissenting opinion. He said . . . "In reversing, the Court holds that there can be no direct infringement (and hence, of course, no contributory infringement) of a combination patent by replacement of any of the components of the patented entity unless (1) such component is itself separately patented, or (2) the *entire* entity is rebuilt at one time." *Aro,* 365 U.S. at 370, 81 S.Ct. 599, cited in *TSC Industries, Inc.,* 406 F.2d at 56.

The determination of whether "repair" or "reconstruction" occurred in the present case, therefore, depends upon the scope of claim 1 of the Raab patent. If, as Wells asserts, the patented entity includes the link members, replacement with the Wells brake switch alone does not constitute "reconstruction." If, as Littelfuse asserts, the patented entity is the brake switch alone, replacement with the Wells brake switch constitutes reconstruction.

Since the claim made in the patent is the sole measure of the grant, *Aro Mfg. Co.,* 365 U.S. at 339, 81 S.Ct. 599; *Laser Alignment, Inc. v. Woodruff & Sons, Inc.,* 491 F.2d 866, 872 (7th Cir. 1974), *cert. denied,* 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113, a good starting point is an examination of the terms of the claim in issue.[6]

with the Wells brake switch. *See Aro Mfg. Co.,* 365 U.S. at 342, 81 S.Ct. 599.

**6.** The text of claim 1 appears in footnote 2.

The parties have stipulated that the claim was written in *Ex Parte Jepson*[7] form in response to a rejection by the Patent Office Examiner on the grounds that the claim prior to its amendment was drawn to an old combination. (Stipulation 2.) This claim is typical of *Ex Parte Jepson* type claims in that it is divided into two parts separated by the expression "the improvement comprising." The portion of the claim prior to "the improvement comprising," which is hereafter referred to as the preamble, constitutes the old matter forming the setting for the new. The portion of the claim following the preamble sets out the novel features of the patented combination. R. Ellis, Patent Claims § 14 (1949).

*Ex Parte Jepson,* 243 O.G. 525 (1917), dealt with the propriety of the form of two claims[8] for an invention which consisted of adding a solenoid coil in a certain relation to old and well known apparatus for operating the lights of a car from a storage battery and charging the battery from a variable-speed generator driven from the axle of the car. In approving the form of the claims, Assistant Commissioner Clay noted that where inventions are improvements added to old structures, no complete statement of structure can be made without reference to something old. The Assistant Commissioner stated:

> In the instant case the fundamental structure was all old and the invention resided in the use of a particular coil in a particular relation. In order that the use of this coil be made clear, it is necessary to state with what it coacts and how its function affects the function of the other apparatus which was old. The whole apparatus upon which the applicant's invention is engrafted is not a part of his invention, and yet it must be considered and is as essential as the pedestal of a statue is essential to the statue, although it is no part of it. 243 O.G. at 527.

Assistant Commissioner Clay further stated that "[t]he preamble may be an actual limitation if the real invention cannot exist apart from it, whereas if the real invention does not at all depend upon it then the preamble is a mere explanatory name and title." 243 O.G. at 528. The Assistant Commissioner concluded that whether or not elements in the preamble are necessarily present in order to make the function or structure of the invented apparatus complete is a question which must be left to the courts to decide. 243 O.G. at 528.

"Ever since the enunciation of the Jepson Doctrine, the Patent Office has looked favorably toward Jepson Type Claims. The decisions of the Patent Office Tribunals have uniformly approved Jepson Type Claims which have been drafted in accordance with the Jepson Doctrine. The Patent Office Guidelines for Drafting a Model Patent Application were published on January 7, 1969 (858 O.G. 7) and state that such claims are particularly suitable for defining improvement inventions." 3 A. W. Deller, Patent Claims § 459 (2d ed. 1971). The Patent Office Guidelines, 858 O.G. 7, provide in relevant part:

> The form of claim required in Rule 75(e) is particularly adapted for the description of improvement type inventions. It is to be considered a combination claim and should be drafted with this thought in mind.

---

7. *Ex Parte Jepson,* 243 O.G. 525 (1917).

8. The claims in *Ex Parte Jepson* were as follows:

16. In an electrical system of distribution of the class wherein a variable speed generator charges a storage battery and when the battery becomes sufficiently charged a voltage coil becomes effective to regulate the generator for constant potential, the combination with said voltage coil of a coil traversed by current flowing to the battery which is acted upon by decreasing battery current to reduce the potential maintained constant by the voltage coil.

17. An electrical system of distribution wherein a generator charges a storage battery until the battery reaches some desired state of charge whereupon a voltage coil becomes effective to regulate the generator for constant potential, characterized by the fact that there is combined with said voltage coil a coil traversed by current flowing to the battery which is acted upon by decreasing battery current to reduce the potential maintained constant by the voltage coil.
243 O.G. at 525.

In drafting claims in accordance with Rule 75(e), *the preamble is to be considered to positively and clearly include all the elements or steps recited therein as a part of the claimed combination.* (Emphasis added.)

Rule 75(e), 37 C.F.R. § 1.75(e), provides:

(e) Where the nature of the case admits, as in the case of an improvement, any independent claim should contain in the following order, (1) *a preamble comprising a general description of all the elements or steps of the claimed combination which are conventional or known,* (2) a phrase such as "wherein the improvement comprises," and (3) those elements, steps and/or relationships which constitute that portion of the claimed combination which the applicant considers as the new or improved portion. (Emphasis added.)

Claim 1 of the Raab patent follows the format set forth in Rule 75(e). Thus, Rule 75(e) and the Patent Office Guidelines indicate that the preamble of claim 1 of the Raab patent contains "elements of the claimed combination which are old."

Numerous cases have held that the preamble portion of *Ex Parte Jepson* Type Claims form part of the patented combination. *See generally* 3 A. W. Deller, Patent Claims §§ 456–462 (2d ed. 1971); R. Ellis, Patent Claims §§ 14, 178, 179 (1949); V. E. Woodcock, *The Well-drafted Claim* at 25, in Patent Procurement & Exploitation (1963). Jepson Type Claims have been regarded in *some cases* as consistently defining a combination including the old structure set forth in the preamble. *Ex Parte Lennon,* 140 U.S.P.Q. 67 (Patent Office Board of Appeals 1963); *Application of Dunn,* 349 F.2d 433, 52 CCPA 1760 (1965); *Ex Parte Witzel,* 8 U.S.P.Q. 325 (Patent Office Board of Appeals 1931). In other cases, the determination of whether elements in the preamble are considered to be part of the patented invention depends upon whether the preamble is necessary to give life and meaning and vitality to the claims or counts. *Marston v. J. C. Penney Company,* 353 F.2d 976 (4th Cir. 1965), *cert. denied,* 385 U.S. 974, 87

S.Ct. 515, 17 L.Ed.2d 437; *Kropa v. Robie,* 187 F.2d 150, 38 CCPA 858 (1951); *Application of Walles,* 366 F.2d 786, 54 CCPA 710 (1966); *Lawson v. Davis,* 129 F.2d 873, 29 CCPA 1217 (1942); *Application of Higbee,* 527 F.2d 1405 (C.C.P.A.1976); *California Car Wash Systems, Inc. v. Danco, Inc.,* 387 F.Supp. 1345 (D.Colo.1974). In *Marston, supra,* the court explained the test as follows:

If the preamble merely states a purpose or intended use and the remainder of the claim completely defines the invention independent of the preamble, it is not a limitation on the claims. On the other hand, if the claim cannot be read independently of the preamble and the preamble must be read to give meaning to the claim or is essential to point out the invention, it constitutes a limitation upon the claim. 353 F.2d at 986.

Although the claim in *Ex Parte Lennon, supra,* was held not to be in *Jepson* form, the analysis employed by the Board is also instructive:

According to the weight of authority, where the preamble of a claim is tantamount to a statement of mere adaptability or intended use, i.e., with the remaining part of the claim being a self-contained description of structure not depending for completeness upon the preamble, the latter is not a patentable limitation in the claim and, hence, structural elements recited therein are not parts of the claimed combination. As a corollary, where the body of the claim refers back to structure recited in the preamble and depends for completeness on such structure, then such structure becomes a part of the claimed combination. 140 U.S.P.Q. at 70.

The preamble in claim 1 of the Raab patent states more than the purpose or intended use of the switch mechanism. First, the function of the various elements of the switch mechanism can be understood only with reference to the interrelationship of the elements to the link members. In addition, the inventive quality of the switch mechanism in part arises from the positioning of the elements of the switch mecha-

nism with reference to the link members. Thus, the portion of the claim following "the improvement comprising" depends on at least the link members in the preamble for a description of the complete structure essential to the functioning of the switch device. Without determining whether all of the elements recited in the preamble are part of the structure of the patented combination, at least the link members are necessary to give life, meaning and vitality to the claim.

The specifications and file history also support this reading of claim 1 of the Raab patent. Reference to both the specifications and file history in determining the scope of a claim is proper. *Ellipse Corporation v. Ford Motor Company*, 452 F.2d 163, 167 (7th Cir. 1971), *cert. denied*, 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337.

"While the claims of a patent limit the invention, and specifications cannot be utilized to expand the patent monopoly . . . it is fundamental that claims are to be construed in light of the specifications and both are to be read with a view to ascertaining the invention." *United States v. Adams*, 383 U.S. 39, 48–9, 86 S.Ct. 708, 713, 15 L.Ed.2d 572 (1966). *Bendix Corporation v. Balax, Inc.*, 421 F.2d 809 (7th Cir. 1970), *cert. denied*, 399 U.S. 911, 90 S.Ct. 2203, 26 L.Ed.2d 562.

The district court was correct in concluding that the specifications indicate that the link members are intimately related to the switch mechanism and are intended to be part of the patented combination. As stated in the specifications, the principal object of the invention is:

. . . to provide a combination link and switch device, which is mechanically

incorporated between the brake mechanism and the brake pedal. . . .

Further objects of the invention reside "in the details of construction of the link and switch device and in the cooperative relationships between the component parts thereof." In addition, the specifications state that the combination link and switch device "includes a pair of relatively movable members such as telescoping members. . . . . ."

The file history also indicates that the link members are part of the patented combination.

It is, of course, well settled that an invention is construed not only in the light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office . . . Claims as allowed must be read and interpreted with reference to rejected ones and to the state of the prior art . . . . *Graham v. John Deere Co.*, 383 U.S. 1, 33, 86 S.Ct. 684, 702, 15 L.Ed.2d 545 (1966).

Claim 1 as originally submitted[9] was twice rejected for being drawn to the old combination of a brake mechanism, stoplight, brake pedal, moving link members, and a switch mechanism. The examiner ruled that prior patents had the same elements related in the same way. The examiner also ruled that although the normally open switch in the Raab patent was carried by one rather than both link members as was the case in prior combinations, this would not serve as a basis for patentability. The examiner indicated that the improvement appeared to be in the switch mechanism *per se* rather than in the old combination.

---

**9.** Claim 1 as originally drawn was as follows: In an automotive vehicle having a brake mechanism, a brake pedal for operating the brake mechanism, and a stoplight for indicating the operation of the brake mechanism, [a combination link and switch device] for operating the brake mechanism and illuminating the stoplight when the brake pedal is depressed comprising, a pair of relatively movable telescoping members connected respectively to the brake mechanism and the brake pedal and having aligned abutting surfaces, a normally open switch carried by one of said members for controlling the illumination of the stoplight, a switch actuator carried by the other of said members, and a spring connected to said members for normally separating the abutting surfaces thereof and allowing the switch to open, depression of the brake pedal relatively moving said members against the action of the spring to engage the abutting surfaces thereof, and to close the switch and moving both of said members to operate the brake mechanism.

In response to the examiner's second rejection, the applicant filed an amended claim. Remarks filed by the applicant with the amended claim explain the significance of the changes.[10] The applicant first stated:

> These claims initially specify structure which is old in the art and then set forth applicant's particular improvement in such structure, these claims now being of the *Ex Parte Jepson* type. (Stipulation Exhibit 4.)

The claim was amended to "point out more particularly applicant's invention." (Stipulation Exhibit 4.)[11] Thus, the claim indicated for the first time that the elements of the switch mechanism are arranged exteriorly and out of the confines of the link members. In addition, the amended claim specified for the first time that the spring was to have sufficient strength to prevent engagement of the link members until sufficient pressure to activate the brake mechanism is applied to the brake pedal. Although acknowledging in his remarks that the prior art as evidenced by the Rockwell patent showed the same general combination as applicant's invention, the applicant in his remarks argued that the cited improvements distinguished claim 1 from the prior art. In the examiner's response to applicant's July 14, 1964, amendment, the Rockwell patent is described as follows:

> Rockwell discloses a switching mechanism that has two members which move relative to each other. This is used in conjunction with a brake pedal, brake mechanism and stoplight. (Stipulation Exhibit 4.)

Since applicant stated that claim 1 and Rockwell had the same general combination and since the examiner indicated that the Rockwell patent combination includes the link members, the file history indicates that the link members are part of the patented combination in claim 1.

Cases relied upon by Littelfuse are distinguishable from the case before this court.

Littelfuse relies on *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961), where the claims related elements of a convertible top structure of an automobile to the body of the car. Although the claims referred to the body structure, Littelfuse points to Mr. Justice Black's concurring opinion wherein Mr. Justice Black states that contributory infringement would result if the entire top blew off and was replaced by the owner without the patentee's consent. *Aro Mfg. Co.*, 365 U.S. at 357, 81 S.Ct. 599. Littelfuse argues that just as the car body was environmental in *Aro*, the link members are environmental here.

The claims in *Aro Mfg. Co.*, however, were not in *Jepson* form and therefore presented different problems of construction than confront the court here. In addition, there is no indication that the Court in *Aro Mfg. Co.* was required to determine the outer limits of the patent in question and thereby ascertain whether the portions of the automobile body were part of the patented combination. Littelfuse's argument must be viewed in light of a passage written by Chief Justice Marshall in *Cohens v. Commonwealth of Virginia*, 1821, 6 Wheat. 264, 398, 5 L.Ed. 257, cited in *United States v. Zuskar*, 7 Cir., 237 F.2d 528, 532, *cert. denied*, 352 U.S. 1004, 77 S.Ct. 564, 1 L.Ed.2d 549:

> "The counsel for the defendant * * * urge * * * some *dicta* of the court, in the case of *Marbury v. Madison* [1 Cranch

---

10. Reference to the applicant's arguments in the file wrapper is proper to assist in the construction of the claim. *See Ellipse Corporation v. Ford Motor Company*, 452 F.2d 163 (7th Cir. 1971), *cert. denied*, 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337. "While arguments in the file wrapper cannot be used to expand the scope of claims, they can be used to affirm a construction, permissible by the wording of the claims, as according with the intentions of the inventor and the Patent Office." *Cutter Laboratories v.*

*Lyophile-Cryochem Corp.*, 179 F.2d 80, 87 (9th Cir. 1949); 4 A. W. Deller, Deller's Walker on Patents § 233.

11. The utility of a Jepson Type Claim in assisting the applicant in distinguishing prior art and thereby enabling the applicant to point out the patentable nature of his invention is well recognized. 3 A. W. Deller, Patent Claims § 459 (2d ed. 1971).

137, 2 L.Ed. 60]. It is a maxim, not to be disregarded, that general expressions, in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in the subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

Thus, we do not believe that Mr. Justice Black's statement in *Aro Mfg. Co.* is controlling.

Littelfuse also relies on *Aro Mfg. Co.* for the proposition that even if the link members are part of the patented combination, replacement of the brake switch would nonetheless constitute contributory infringement since the parts supplied are in substance the very thing invented.

The Court in *Aro Mfg. Co.*, however, rejected a similar contention. The Court recognized that a combination patent covers only the totality of elements in a claim and no element of the claim separately viewed is entitled to monopolistic protection. Since one element of the potential combination cannot be ascribed the status of the patented invention itself, the Court ruled that "there is no legally recognizable or protected 'essential' element, 'gist' or 'heart' of the invention in a combination patent." *Aro Mfg. Co.*, 365 U.S. at 345, 81 S.Ct. at 604. Littelfuse points out that Mr. Justice Black indicated in his concurring opinion that omission of a minimal component "from a 'making' of the combination, such as the extreme example of omission of a single bolt from a patented machine or a button from a patented garment, might call upon this Court to articulate some rather obvious refinements to this simple test of 'making.'" *Aro Mfg. Co.*, 365 U.S. at 354–5, 81 S.Ct. at 609. The link members, however, cannot be equated to a minimal component such as a button or bolt.

Littelfuse also relies on *Williams Mfg. Co. v. United Shoe Mach. Corp.*, 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537 (1942), for the proposition that elements in the preamble are not part of the claimed combination. The petitioner in *Williams Co.* asserted that the claims in suit were overly broad in that they were written so as to blanket the entire machine rather than the particular improvement. The Court rejected petitioner's argument and stated that although preliminary statements in the claims specified the type of machine in which the claimed subsidiary combination of elements works an improvement over the prior art, "in mentioning these other mechanical parts, the claim does not purport to embody them as elements of the claimed combination." [12]

---

12. The Court in *Williams Co.* stated:

We think, however, that each of the claims is confined to a combination of specified means applicable only to a restricted portion and function of the whole machine. In stating his claims, the patentee sometimes says "a machine of the class described having, in combination, . . ." Obviously, no machine will infringe which does not have in combination the means specified in each of the claims for accomplishing the particular portion of the total operation covered by the claim. Other claims refer to "a lasting mechanism of the class described having, in combination, . . ." The same comment is applicable. Other claims read: "In a machine of the class described, the combination . . ." Such preliminary statement is commonly and properly used to specify the type of machine in which the claimed subsidiary combination of elements works an improvement over the prior art. In describing the novel combinations embodied in the claims, it was necessary to make reference to certain portions of the machine in connection with which the new combinations were to operate and with which they were to dovetail, but, in mentioning these other mechanical parts, the claim does not purport to embody them as elements of the claimed combination. To construe such a claim for a combination of new elements intended to be embodied in some well recognized mechanical aggregation, such as a sewing machine or a washing machine, as a claim covering all the mechanical details, or all the well known parts of the machine, would be to nullify every patent for an improvement in a type of machine long in use and would invalidate

*Williams Co.*, 316 U.S. at 369, 62 S.Ct. at 1182.

Claim 1 of the Raab patent begins, "In an automotive vehicle having. . . ." As in *Williams Co.*, such a preliminary statement specifies the type of machine in which the claimed combination works an improvement over the prior art but does not embody every element of an automobile in the claimed combination. Without deciding the question, reference to the brake pedal, brake mechanism, and stoplight might also be regarded as a further specification of the type of machine in which the claimed combination is intended to operate. Reference to link members, however, goes beyond a mere description of a portion of the machine with which the new combination is to operate. On the contrary, the link member is so intimately connected with the elements of the switch mechanism that it must be regarded as part of the novel combination.[13]

Thus, in light of the *Jepson* format, the specifications and file history, we believe that at least the link members are part of the patented combination. Replacement of the Littelfuse brake switch with the Wells brake switch, therefore, constitutes permissible "repair," and Wells is not guilty of contributory infringement. As Wells correctly points out in its brief, our decision does not render nugatory the monopolistic protection afforded Littelfuse in the original equipment market.

For the foregoing reasons, the decision of the district court is hereby affirmed.

---

thousands of patents for improvements in standard machines. It would be difficult to describe an improvement in a washing machine without naming such a machine as the thing to which the patent is addressed, and equally difficult to refrain from referring to various parts of the machine, such as the tub or the motor which actuates the washer. But it has never been thought that a claim limited to an improvement in some element of the machine is, by such reference, rendered bad as claiming a monopoly of tubs or motors used in washing machines. 316 U.S. at 368-9, 62 S.Ct. at 1182. (footnotes omitted)

13. Additional cases cited by Littelfuse which follow *Williams Mfg. Co.*, *supra*, are also distinguishable on the ground that the link members

in claim 1 of the Raab patent are more than structural setting. *Harris v. National Machine Works*, 171 F.2d 85 (10th Cir. 1948), *cert. denied*, 336 U.S. 905, 69 S.Ct. 491, 93 L.Ed. 1070; *Sanford v. Kepner*, 195 F.2d 387 (3rd Cir. 1952), *aff'd*, 344 U.S. 13, 73 S.Ct. 75, 97 L.Ed. 12; *Spee-Flo Manufacturing Corporation v. Gray Company*, 255 F.Supp. 618 (S.D.Tex. 1964), *aff'd*, 361 F.2d 489 (5th Cir. 1966). In addition, the court of appeals in affirming the district court opinion in *Stukenborg v. Teledyne, Inc.*, 299 F.Supp. 1152 (Cent.D.Cal.1969), *aff'd*, 441 F.2d 1069 (9th Cir. 1971), *cert. denied*, 404 U.S. 852, 92 S.Ct. 90, 30 L.Ed.2d 92, expressed no opinion on the correctness of the district court's construction of the preambles of claims there involved.