**GREEN v. ELECTRIC VACUUM CLEANER CO., Inc.**

No. 9177.

Circuit Court of Appeals, Sixth Circuit.

Dec. 9, 1942.

313

Merritt A. Vickery, of Cleveland, Ohio (Hugh McNamee, of Cleveland, Ohio, on the brief), for appellant.

John F. Oberlin and L. C. Spieth, both of Cleveland, Ohio (Oberlin, Limbach & Day and Spieth, Taggart, Spring & Annat, all of Cleveland, Ohio, on the brief), for appellee.

Before SIMONS, HAMILTON, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The successful plaintiff in the present patent and trade-mark infringement controversy, is the largest manufacturer of vacuum cleaners in the country. The defendant who assails the decree below is engaged in the business of reconditioning and selling reconditioned or reconstructed vacuum cleaners and vacuum cleaner parts. The vacuum cleaner, as such, is not patented, but is an assembly of parts, some of which, in the plaintiff's structures, are covered by patents which it owns, and there is here presented no issue as to their validity.

Patented parts alleged to have been used and sold by the defendant either in recon-structed machines or separately, are swivel casters covered by the patent to Brintzen-hofe, No. 1,510,300, granted September 30, 1924, and vacuum cleaner brush bear-ings responding to Darst patent No. 1,755,-054 granted April 15, 1930. The defendant denies neither their sale nor use, but, claim-ing them to be genuine parts acquired in legitimate channels of trade from custom-ers or dealers of the plaintiff, asserts an implied license, by invoking the principle that the monopoly granted by a patent cov-ers only the first use or sale of the patented article, and successive sales of it thereafter do not come within its scope.

It appears, however, that the defendant refused, or at least failed to disclose his source of supply for the patented parts. This was on the ground that the plaintiff's business practices were such that it would not permit its authorized dealers to sell to persons engaged in reconditioning and re-constructing its vacuum cleaners, and that to disclose the channels through which he purchased them would subject many dealers to harassment by the plaintiff to their detri-ment, with the result that his own channels of supply would be closed. He contented himself with giving evidence that he pur-chased all patented parts from authorized dealers, and now urges that since his evi-dence was not traversed, the findings and conclusions of the court that he had in-fringed the patents, are not supported by evidence.

There is, however, this infirmity in the appellant's position. He claims to be authorized to sell the patented parts by virtue of an implied license from the own-er of the patents. Relying upon license implied from sale, the burden is on him to prove it, General Electric Co. v. Continent-al Lamp Works, 2 Cir., 280 F. 846, and the first question presented is whether such burden is borne by his mere assertion that the articles are legitimate and, without dis-closing their source, were purchased from those who bought from the plaintiff. There is authority for the proposition that one who buys patented articles from a vendor who has himself purchased them from un-known manufacturers, does not carry the burden of showing that he is a licensee. Sherman, Clay & Co. v. Searchlight Horn Co., 9 Cir., 225 F. 497. This aside, how-ever, infringement is a question of fact, Stilz v. United States, 269 U.S. 144, 147, 46 S.Ct. 37, 70 L.Ed. 202, and under earlier rules we considered that much weight

should be attached, in determining that issue, to the findings and opinion of the trial judge who, having heard the witnesses, had superior opportunity for ascertaining the truth. LaBour v. Gorman-Rupp Co., 6 Cir., 108 F.2d 279; Williams Mfg. Co. v. United Shoe Mach. Corp., 6 Cir., 121 F.2d 273. Under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it is now impermissible for us to set aside findings of fact unless clearly erroneous, and we are required to give due regard to the opportunity of the trial court to judge of the credibility of witnesses. Hazeltine Corp. v. Crosley Corp., 6 Cir., 130 F.2d 344, decided August 28, 1942. We are not, upon this record, able to say that the court which found the patent claims infringed, was clearly wrong. It is true that the defendant purchased some parts from known authorized dealers, but their sale is not within the sweep of the decree or its injunctional order.

■ A subordinate act of alleged infringement was the use by the defendant of brushes which had been sold by the plaintiff to a junkman, and by him resold to the defendant who salvaged what he could and used them in his reconstructed cleaners or sold them as reconditioned parts. So far as the brushes contained the patented bearings, the defendant had no right to use them for this purpose since the license implied from sale in the usual channels of trade does not apply to a sale of an article to be scrapped. Tindel-Morris Co. v. Chester Forging & Engineering Co., C. C., 163 F. 304; Cotton-Tie Co. v. Simmons, 106 U.S. 89, 1 S.Ct. 52, 27 L.Ed. 79. This is on the ground that a sale as scrap is a sale not to use but to destroy, and cannot be wrested into a sale of the patented machines because the different parts could be picked up and put together out of it.

The principal vacuum cleaners produced by the appellee were designated as Premier and Premier-Duplex, with names and labels registered as trade-marks, T. M. 162,244. The appellant was charged with trade-mark infringement in selling its rebuilt machines as genuine Premier and Premier-Duplex cleaners with the appellee's labels thereon, and also in selling separately to other rebuilders of vacuum cleaners, bags and cover plates containing the protected labels. The defendant denies trade-mark infringement on the ground that the reconstructed machines were the genuine products of the appellee, containing only genuine parts, that the bags and cover plates were also original products of the appellee, and on the further ground that since the appellee itself sold its bags and cover plates separately there was either a waiver of its rights under its protected labels, or an implied license to use them upon reconstructed or reconditioned machines.

■ It will be observed that in respect to this issue, as in respect to the charge of patent infringement, the defendant failed to carry the burden of proving waiver or license by failing to disclose that the labeled parts were purchased from authorized dealers who were supplied by plaintiff. Even so, a careful review of the authorities leads us to the conclusion that one who processes and sells protected merchandise or machines may not do so under original labels, even though there has been no representation that the processing was by the original manufacturer. General Electric Co. v. Re-New Lamp Co., C.C.D. Mass., 128 F. 154; Coty v. Prestonettes, Inc., 2 Cir., 285 F. 501; Coca-Cola Co. v. Bennett, 8 Cir., 238 F. 513; Ingersoll v. Doyle, D.C., 247 F. 620. The doctrine is grounded on the principle that when a manufacturer sells an article identified by his name, he gives no implied permission to anybody to do anything to it which may change or injure its quality and still identify it as his. In cases such as the Coty case, where there was repackaging or rebottling of such delicate articles as face powders and perfumes, the principle was bottomed on the fact that a high grade of skill was required in the process, and so they were to be distinguished from cases like that of Russia Cement Co. v. Frauenhar, 2 Cir., 133 F. 518, where ordinary bulk goods which require no skill in repackaging, were involved. However, in the machine arts involving skilled artisanship, the courts have followed the first line of cases. Ingersoll v. Doyle, supra; Champion Spark Plug Co. v. Reich, 8 Cir., 121 F.2d 769. In the latter case, upon extensive review of authority, it was held that the purchaser of goods does not acquire ownership of the trade-mark attaching to them, and he cannot sell such goods after he has changed or altered them, so that they no longer represent the original character and excellence which the trade-mark indicates, and to sell such altered goods without removing the original trade-mark, is infringement. The present case falls within this rule.

The principal contention of the defendant, however, is that the plaintiff is violating the anti-trust laws by attempting to control the resale price of its products by its contracts with dealers or its general business practice, and he relies mainly on the decision of and rationalization in Ethyl Gasoline Corp. v. U.S., 309 U.S. 436, 60 S.Ct. 618, 84 L.Ed. 852. The basis for this contention is asserted to be the fact that the plaintiff refused to sell its parts to the defendant and that on December 13, 1937, it addressed a communication to all of its division managers, auditors, cashiers, and service managers, containing the following directive:

"You must not, under any circumstances, sell parts to wholesalers who issue catalogs offering Premier parts for resale to other dealers unless that dealer confines his business on Premier parts to genuine parts purchased from us.

"You must never sell Premier or G. E. bags, name plates or motor plates to any dealer engaged in rebuilding traded-in or junk cleaners.

"Except for the above mentioned restrictions, you are permitted to sell parts to all dealers, exercising good judgment in doing so. Any order for a large quantity of parts should be investigated before filling, to determine the purpose for which it is to be used."

It must be observed that the communication above referred to is not addressed to the authorized dealers of the plaintiff, that it does not constitute a contract, and has no reference to prices. Insofar as it discloses a business practice it falls far short of the practice analyzed and condemned in the Ethyl Gasoline case as tending to extend a patent monopoly to fields not covered by the patent. It will be recalled that vacuum cleaners are not, of themselves, patented articles, and there is no proof that the plaintiff monopolizes the vacuum cleaner market or tends to do so. Plaintiff, having established a good will for its products and a reputation for its trademarks, is not without right to protect them from those who seek to trade upon them. It will also be observed that the communication permits sales of parts to all dealers excepting only those who do not confine their business to genuine Premier parts, or those who are engaged in rebuilding traded-in or junked cleaners. Such directives as are contained in the communication do not, in our view, constitute unreasonable or prohibited restraint of trade under the anti-trust laws.

However, it is our view that some of the provisions of the decree should be modified. Paragraph 8(c) of the decree is amended to read as follows:

"From offering for sale or selling reconditioned or reconstructed vacuum cleaners using plaintiff's trademarks Premier or Premier Duplex, or either of them, in the manner which has been employed; but not if the reconditioned or reconstructed vacuum cleaners are marked as prominently as the trademarks, to indicate that the reconditioning or reconstruction was done by the appellant."

Paragraph 8(d) of the decree is amended by adding at the end thereof, "without license from the plaintiff."

The decree as amended is affirmed.

HAMILTON, Circuit Judge (dissenting).

I am not in accord with so much of the majority opinion as decides that appellant failed to carry the burden of proving an implied license.

Patented appliances or machines or trademarked articles sold by manufacturers of such articles, to be used in the everyday pursuits of life, become the individual property of the purchasers and as to them and their vendees, such articles are freed from the monopolies of the patent and trademark laws. Unconditional sales of their articles made by patentees or owners of trademarks impliedly authorize the purchaser or his vendee to use, repair or improve such articles without restriction.

As I view the facts, appellant was doing no more than repairing the partial damage caused by accidents to, or from wear and tear of, the vacuum cleaners in question. The original purchasers and their vendees of the machines acquired the whole of them, and the appellant here was exercising that care which everyone may use to lengthen the life of that which he has purchased.

The court should not aid appellee to suppress the sale of its goods, placed upon the market by it, where any person had the right to purchase them, by permitting appellee under the guise of protecting its patents and trademarks, to examine the appellant or his witnesses to discover where he purchased the articles, because they were resold under conditions which did not meet

316

appellee's approval. Excluding the parts purchased by appellant, which appellee had discarded in the course of manufacture and appraising fairly the evidence in the record, I am of the opinion appellee has received its tribute for its trademark and patent monopolies and to reward it further would result in its unjust enrichment at the expense of appellant.