SUNSPORT, INC., Plaintiff,

v.

BARCLAY LEISURE LTD., Defendant.

No. CIV.A. 3:96CV1010.

United States District Court,
E.D. Virginia,
Richmond Division.

May 16, 1997.

Thomas Marshall Wolf, David Denman Hopper, William Arthur DeVan, Mezzullo & McCandlish, Richmond, VA, for Sunsport, Inc.

Carla T. Hurlbert, Lonnie Dayton Nunley, III, Robert Noel Clinard, Hunton & Williams, Richmond, VA, Mark A. Flagel, Daniel S. Schecter, Latham & Watkins, Los Angeles, CA, for Barclay Leisure Ltd., Ultrabronz America, Inc., Kathryn McWhirter, Robert Latham, Certikin USA, Inc.

Edwin Lewis Kincher, Jr., Eric James Remington, Taylor, Hazen & Kauffman, Richmond, VA, for Sun Sport, Inc., a Tennessee Corp.

Patryk Reczek, Agoura Hills, pro se.

Peter D. Mills, Glen Allen, VA, pro se.

Beverly Constance Powell, Macaulay Lee & Powell, P.C., Richmond, VA, Donald Robert Lee, Jr., Framme, Macauley & Lee, L.C., Richmond, VA, for Patryk Reczek.

Lynn Lewis Tavenner, Wright, Robinson, Osthimer & Tatum, Richmond, VA, Chapter 7 Trustee for Ultrabronz USA, Inc.

## *MEMORANDUM*

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on plaintiff's motion for summary judgment on trade dress infringement; defendant's motion for partial summary judgment on trademark infringement, false designation of origin, and breach of settlement agreement, and order to show cause re: contempt; plaintiff's motion for voluntary dismissal of the consolidated state-law case; and defendant's motion for summary judgment on the consolidated case.

### FACTUAL BACKGROUND

Barclay, an English company and the exclusive owner of the ULTRABRONZ name and mark, manufactures ULTRABRONZ brand tanning beds, and presently distributes these products in the United States through a corporate affiliate (Ultrabronz America). From July 1994 until October 1, 1996 UB USA, a corporation owned and operated by the current owners of the plaintiff, exclusively distributed Barclay's Ultrabronz brand products. Third party Patryk Reczek negotiated the deal between UB USA and Barclay. During this distribution time, UB USA operated under a limited license to use the Ultrabronz mark, but the license agreement expressly provided that "the Ultrabronz name and the goodwill associated therewith shall remain the exclusive property of [Barclay] and [UB USA] shall not acquire any rights in respect thereof except as expressly provided under this License Agreement ..." In May 1996, the PTO registered ULTRABRONZ and all the rights and title to it accrued to Barclay.

Plaintiff Sunsport distributes the Sunsport tanning bed which directly competes with defendant's product. Sunsport is owned and

operated by Peter and Sandra Mills who had previously owned and operated UB USA. Sunsport has no rights to the ULTRA-BRONZ mark and is not authorized to use it. The Sunsport tanning bed, and Sunsport's use of the ULTRABRONZ mark form the basis for the current controversy.

## PROCEDURAL HISTORY

This case has been the subject of much litigation. In July 1996, Barclay learned that Mills and Reczek were developing a new tanning bed superior to its own. Barclay alleged that such actions violated its noncompete covenant and the distributorship agreement. Barclay sought a TRO to stop UB USA from showing its new bed in a November trade fair. UB USA then filed suit in this Court to preserve its distribution rights. The two parties settled on December 11, 1996. UB USA and Mills and Reczek agreed to terminate UB USA's rights to distribute ULTRABRONZ products. The settlement also constrained plaintiff from "the use or association of the ULTRABRONZ mark or name in connection with the sale or marketing of any non-ULTRABRONZ products, particularly by selling or promoting ULTRA-BRONZ bed [sic] in connection with any other product (e.g. products known as Sunsport, Dr. Kern, or Blue Dream.)" UB USA retained the right to use the ULTRABRONZ name only to fulfill outstanding orders for ULTRABRONZ tanning beds.

Subsequent to the settlement, Sunsport sued Barclay seeking a Declaratory Judgment that its manufacture and sale of its tanning bed do not violate Barclay's trade dress rights. Barclay then filed a counterclaim seeking damages under various state trademark laws and the Lanham Act. The Court denied Sunsport's motion to dismiss Barclay's counterclaims against it and all of the claims against Peter Mills and Rezcek individually.

While litigation was pending in this Court, Sunsport filed a Motion for Judgment in the Circuit Court for Richmond City against Barclay's new American distributor and two of its individual representatives alleging tortious interference with contract, conspiracy to cause another to breach contract, and conspiracy to injure business. Defendants removed the case to this Court; the Court denied plaintiff's motion to remand and granted defendant's motion to consolidate the state-law case with the trade dress and trademark case.

## ANALYSIS

I. *Barclay's Motion for Partial Summary Judgment re: Trademark Infringement, False Designation of Origin, and Breach of Settlement Agreement; and Order to Show Cause re: Contempt.*

Barclay alleges that plaintiff's use of the ULTRABRONZ mark since the settlement infringes its trademark rights under 15 U.S.C. § 1114(1)(a) and is likely to cause confusion. Barclay further claims that plaintiff's sales of unlabeled, reconditioned UL-TRABRONZ beds constitutes false designation of origin under § 43(a) of the Lanham Act. Finally, plaintiff's conduct violates the December settlement agreement and places Mills, Reczek and UB USA in contempt. The Court finds that Sunsport is liable for trademark infringement and false designation of origin and will grant the motion for partial summary judgment.

Under Federal Rule of Civil Procedure 56(c), the moving party is entitled to summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The burden is on the moving party, and "the facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to . . . the party opposing the motion." *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). The non-moving party, however, may not rest on mere allegations or denials contained in the pleadings, but must come forth with specific facts with affidavits, depositions, interrogatories or other evidence to show a genuine issue for trial. *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allstate Financial Corp. v. Financorp, Inc.,* 934 F.2d 55, 58 (4th Cir.1989). Summary judgment is proper "if the evidence is such that a reasonable jury could [not] return a verdict for the non-moving party." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

Barclay claims that Sunsport's mass mailings to former UB USA customers in December and January, its operation of a website under the name "www.ultrabronz.com," and its sales of unlabeled reconditioned beds violate its trademark rights in the ULTRABRONZ mark. A violation of § 1114(1)(a) occurs when a person 1) uses any reproduction, counterfeit, copy, or colorable imitation of a mark; 2) without the registrant's consent; 3) in commerce; 4) in connection with the sale, offering for sale, distribution, or advertising of any goods or services; and, 5) where such use is likely to cause confusion, or to cause mistake or to deceive. *See Sara Lee Corp. v. Kayser–Roth Corp.,* 81 F.3d 455, 459 (4th Cir.1996). The parties do not dispute the first four factors.

■ Therefore, to establish liability, Barclay first must prove that it owns a protectable mark; then it must demonstrate that Sunsport's use is likely to confuse consumers. Sunsport concedes that Barclay has a protectable interest in the federally registered ULTRABRONZ trademark. (opp. motion at 11). It contests that its use of ULTRABRONZ is likely to cause confusion. The Fourth Circuit considers the following factors in determining whether a likelihood of confusion exists: 1) the distinctiveness of the senior mark; 2) the similarity of the two marks; 3) the similarity of the goods or services that the marks identify; 4) the similarity of the facilities employed by the parties to transact their business; 5) the similarity of the advertising used by the parties; 6) the defendant's intent in adopting the same or similar mark; and 7) actual confusion. *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir.1984).

A. Mass Mailings

In December 1996, Sunsport mailed 500 postcards to former UB USA customers

which featured a color photograph of the Sunsport tanning bed on the front and the following statements on the back under the caption "Sunsport, the Next Generation":

Our Ultrabronz technical support staff is standing by, 24 hours a day.

We are the only company that can bring you exclusive ULTRABRONZ equipment upgrades.

Several weeks later, Sunsport sent a letter to the same customers which opened with the statement: "We would like to wish all of our extended Ultrabronz family a wonderful New Year." Barclay states that in these marketing materials Sunsport never identified Barclay as the owner of the ULTRABRONZ trademark or the source of ULTRABRONZ brand products.

■ Sunsport argues that the fair use defense protects its actions. To establish fair use a defendant must show that it used the mark 1) fairly and in good faith, 2) only to describe goods and services, and 3) not as a trademark. *Dayton Progress Corp. v. Lane Punch Corp.,* 917 F.2d 836, 840 (4th Cir. 1990). Sunsport claims that it uses the ULTRABRONZ mark as a modifier to describe its ability to work on these sunbeds and the parts it owns. Its references to parts is protected by the "general rule, [that] trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent." *Shell Oil Co. v. Commercial Petroleum Inc.,* 928 F.2d 104, 107 (4th Cir.1991). Similarly, its reference to the ULTRABRONZ technical support staff falls under the defense "where the mark is used only to describe the goods or services of [a] party." *New Kids on the Block v. News America Publishing, Inc.* 971 F.2d 302 (9th Cir.1992).

■ The Court finds that the two mass mailings infringe upon Barclay's protected trademark. Neither the postcard nor the letter clearly indicate that Sunsport's products are distinct from Barclay's. Sunsport does not put a disclaimer in these mailings or otherwise use the text to distinguish its products from Ultrabronz products. Instead, it misleads customers into thinking Ultra-

bronz/Barclay authorized its products. As a former licensee who continues to use the licensor's mark, Sunsport has to overcome the presumption that it has infringed. *Burger King Corp. v. Mason,* 710 F.2d 1480 (11th Cir.1983). Its fair use defense can not surmount this presumption. Sunsport does not use Ultrabronz to modify its product, but uses it to confuse consumers into believing Ultrabronz and Sunsport are affiliates.

### B. Sunsport's Sale of Unlabeled, Reconditioned ULTRABRONZ Beds

The Supreme Court has held that a seller may market reconditioned, trademarked goods only if it "fully discloses" that 1) the goods have been reconditioned and 2) that the reconditioning was done by a party other than the trademark owner. *Champion Spark Plug Co. v. Sanders,* 331 U.S. 125, 130, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386 (1947). Courts interpreting the Lanham Act have found that the sale of reconditioned trademarked goods with no identifying label constitutes trademark infringement. *Singer Mfg. Co. v. Briley,* 207 F.2d 519 (5th Cir. 1953); *Green v. Electric Vacuum Cleaner Co.,* 132 F.2d 312 (6th Cir.1942).

Sunsport concedes that it has sold five reconditioned ULTRABRONZ tanning beds with Sunsport upgrades without labeling them as such. It seeks to avoid liability by claiming that the purchaser of these beds (a distributor in Pennsylvania) knew that Barclay had not sponsored or approved the upgrades. Thus it is not liable because *Champion Spark Plug* and its progeny do not apply so long as the customer is aware that the bed is used.

The Court does not find Sunsport's argument persuasive. Although the distributor knows that Sunsport has altered the beds, the tanning customer does not. Thus, they use tanning beds with the ULTRABRONZ mark prominently displayed and will assume that these modified beds are authorized by Barclay and will blame any injury or dissatisfaction on Barclay. Moreover, Barclay can not control the quality or safety of these beds which threaten to tarnish its good will. Sunsport can not refute Barclay's claim that tanning customers will not know that a particular Ultrabronz bed has been modified. Furthermore, Sunsport's analogy to used cars does not apply to this context. Consumers can differentiate between a new and a used car. Tanning salons, however, do not label their beds "used" and "new," nor is it apparent which is which by looking at them.

Barclay further claims that this act of trademark infringement establishes a claim for false designation of origin. Section 43(a) of the Lanham Act states that "any person who shall affix, apply, or annex, or use in connection with any goods or services.... a false designation of origin ... and shall cause such goods or services to enter into commerce ... shall be liable" 15 U.S.C. § 1125(a). As in a claim for trademark infringement, liability under Section 43(a) also depends on a finding of confusing similarity between the conflicting marks. *Brittingham v. Jenkins,* 914 F.2d 447, 457 (4th Cir.1990). This test essentially boils down to a likelihood of confusion of test. *Id.* The Court concludes that since Sunsport's sales of the reconditioned beds constitute trademark infringement, Sunsport is also liable for false designation of origin.

### C. Sunsport's Operation of an Internet Website Under the Name "www.ultrabronz.com."

In support of its trademark infringement claim, Barclay points to UB USA operating a website on the Internet under the name "www.ultrabronz.com," after the settlement agreement forbade UB USA or Sunsport to use the ULTRABRONZ mark. The Court finds that the continued existence of the website after the settlement did not infringe on Barclay's trademark rights. Sunsport tried repeatedly to remove the website and contacted the appropriate person. Moreover, Barclay suffered no harm from the website's existence because it gave the phone number of Barclay's new distributor and did not refer to Sunsport in any manner.

### D. Breach of the Settlement Agreement and in Contempt of the Consent Judgment.

Barclay argues that Sunsport's actions amount to a breach of the settlement agree-

ment, and place them in contempt of this Court's consent judgment. The Court will deny the motion for breach of settlement agreement because it has never seen a copy of such agreement. The Court does find Sunsport, Mills and third-party Patryk Reczek to be in violation of the Court's consent judgment. The Court will grant Barclay's motion to show cause and will address these violations on the July 24, 1997 hearing date at 9:30.

## II. Sunsport's Motion for Summary Judgment on Trade Dress Infringement

■ Sunsport filed suit seeking a declaratory judgment that its tanning bed does not violate the Ultrabronz trade dress. The trade dress of a product is essentially its total image and overall appearance. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). To prevail on a claim of trade dress infringement a claimant must prove that 1) the trade dress is primarily non functional; 2) the trade dress is inherently distinctive or has acquired secondary meaning; and 3) the alleged infringement creates a likelihood of confusion. *Tools USA and Equip. Co. v. Champ Frame Straightening Equip., Inc.,* 87 F.3d 654, 657 (4th Cir.1996).

■ The record conflicts on the issue of functionality, as well as secondary meaning. Barclay claims that the disputed features (angled canopy, angled base, and hinged back unit) are arbitrary and designed to distinguish the Ultrabronz beds from its competitors. Sunsport responds that these features are functional because they "constitute the actual benefit that the customer wishes to purchase." *Id.* at 657. Sunsport further argues that it deliberately designed a more expensive bed to avoid copying the Ultrabronz bed. After examining the beds at issue, the Court finds that genuine material issues of fact exist which preclude summary judgment.

## III. Barclay's Motion to Dismiss or in the Alternative, for Summary Judgment

Barclay moves to dismiss Sunsport's motion for judgment which alleges that Barclay tortiously interfered with one of its customer contracts. Sunsport originally filed in state court; Barclay removed it to this Court, and this Court consolidated it with the trade dress/trademark case. Sunsport alleges that Barclay induced Endless Summer, a customer, to rescind its contract with Sunsport and to purchase the Ultrabronz beds from Ultrabronz America, Barclay's new distributor.

■ The Court finds that Sunsport's claims must fail as a matter of law because it did not have a contractual relationship with Endless Summer. Thus Sunsport can not meet the basic requirement for a tortious interference claim: an existing contractual relationship with Endless Summer. *See Krantz v. Air Line Pilots Ass'n,* 245 Va. 202, 427 S.E.2d 326 (1993). UB USA contracted with Endless Summer for the sale of three tanning beds. Endless Summer later exercised its "buyback" privileges and returned the bed to Sunsport which has assumed UB USA's preexisting obligations. Sunsport claims that Endless Summer did so because Ultrabronz America threatened the company's exclusive territory and told it the beds were inferior.

Only UB USA contracted with Endless Summer for the beds. Sunsport even concedes that, but claims that under Va.Code § 8.01–13, it can sue in its own name as an assignee. Sunsport does not provide any authority that the assignment of certain obligations under § 8.01–13 satisfies the contractual relationship required for tortious interference claim. Moreover, the case law addressing tortious interference indicate that the parties themselves must have a contractual relationship and Sunsport's assumptions of UB USA obligations do not extend this far. Furthermore, Sunsport does not have a legitimate expectation of future ULTRABRONZ sales since it is no longer associated with the mark. Thus Sunsport can not satisfy *Krantz*'s requirement of "a business expectancy." *Id.* 427 S.E.2d at 328.

■ The Court will also dismiss Sunsport's conspiracy claims as insufficient as a matter of law. Sunsport claims that Ultrabronz America in concert with two employees, Latham and McWhirter conspired to interfere with its business. To establish con-

**424**

spiracy under Virginia law, plaintiff must show that two or more persons combined to accomplish unlawful means. Va.Code § 18.2–499. Sunsport, however, is suing a corporation and two of its employees—essentially only one actor. Since a corporation is a legal fiction capable of acting only through its officers and employees, no conspiracy exists. *See Griffith v. Electrolux Corp.*, 454 F.Supp. 29 (E.D.Va.1978). Thus, Sunsport can not establish a conspiracy because it does not have the requisite number of people acting in concert.

*IV. Sunsport's Motion for Voluntary Dismissal*

Since the Court will grant Barclay's motion to dismiss the state law claim, it will dismiss Sunsport's Motion for Voluntary Dismissal.

For the foregoing reasons the Court will grant Barclay's motion for partial summary judgment, and order to show cause re: contempt and Barclay's motion for summary judgment on the tortious interference claim; the Court will deny Sunsport's motion for summary judgment on trade dress and motion for voluntary dismissal.

**ORDER**

For the reasons stated in the Memorandum this day filed and deeming it just and proper so to do, it is hereby ADJUDGED and ORDERED as follows:

1) Defendant's motion for partial summary judgment and order to show cause: re contempt is GRANTED.

2) Defendant's motion for summary judgment on the consolidated state law claim is GRANTED.

3) Plaintiff's motion for summary judgment on trade dress is DENIED.

4) Plaintiff's motion for voluntary dismissal of the consolidated state law claim is DENIED.