MAURAG, INC., Plaintiff,

v.

Aldo BERTUGLIA, et al., Defendants.

Civil Action No. 4:06cv73.

United States District Court,
E.D. Virginia,
Newport News Division.

July 16, 2007.

Daniel R. Quarles, Kaufman & Canoles, P.C., Williamsburg, VA, for Plaintiff.

Kenneth R. Mayo, Reed Mayo Law Firm PC, Virginia Beach, VA, for Defendants.

## OPINION AND FINAL ORDER

WALTER D. KELLEY, JR., District Judge.

*A bottle of white, a bottle of red*

*Perhaps a bottle of rose instead*

*We'll get a table near the street*

*In our old familiar place*

*You and I—face to face*

*A bottle of red, a bottle of white*

*It all depends on your appetite*

*I'll meet you any time you want*

*In our Italian restaurant.*

-Billy Joel, *Scenes From An Italian Restaurant* (1977)

For many diners in the Williamsburg, Virginia area, Doraldo Ristorante Italiano ("Doraldo's") is the old, familiar place about which Billy Joel sings. The restaurant's excellent reputation attracts customers from substantial distances. The current owner of Doraldo's—plaintiff Maurag, Inc.—believes the restaurant's name to be so valuable that it caused the United States Patent and Trademark Office ("USPTO") to issue a service mark registration protecting it.

Maurag brought this infringement action against Doraldo's founder, defendant Aldo Bertuglia, and three of his corporations that own new restaurants. Maurag objects to Mr. Bertuglia advertising his new restaurants with the tag line "former owner of Doraldo's in Williamsburg." Mr. Bertuglia has counterclaimed, alleging that Maurag defrauded the USPTO by registering a mark that was already in use and that it did not own.

Based on the evidence introduced by the parties at a bench trial and the application of relevant law, the Court **FINDS** in favor of defendants on the infringement claim because Maurag did not prove that the advertisements in question are likely to cause customer confusion. The Court further **FINDS** in favor of Maurag on the counterclaim because Mr. Bertuglia did not prove, by clear and convincing evidence, that Maurag subjectively intended to deceive the USPTO when it registered the disputed mark.

## I. *Findings of Fact*

Defendant Aldo Bertuglia is a career restaurateur who has owned and operated a number of dining establishments, first in the New York City area and later in the region surrounding Williamsburg, Virginia. While in the New York City area, Mr. Bertuglia combined his wife's name, Dora, with his first name, Aldo, to create a restaurant named "Doraldo's."

After moving to Williamsburg, Mr. Bertuglia formed a Virginia corporation, Doraldo Restaurant, Inc., with a partner named Cologio "Charlie" Messina. The corporation owned and operated Doraldo Ristorante Italiano, commonly known as Doraldo's, beginning in 1997.

In 2001, Francesco "Frankie" Alosa, through his company Maurag, bought the Williamsburg Doraldo Ristorante Italiano from Mr. Bertuglia's corporation. The sale was documented by an Asset Purchase Agreement ("APA") (Def.'s Ex. 3). The only documented reference to the trade name "Doraldo's" appears in the Schedule of Assets conveyed (*i.e.*, Attachment A). The first entry on that list states:

> The use of the tradename, Doraldo's, to be used exclusively at 1915 Pocahontas Trail, D-2, Williamsburg, Virginia, including the right to use the telephone number, and the right to use any yellow page advertising that is in place along with any other such advertising.

(Def.'s Ex. 3.) Following the sale, Doraldo Restaurant Inc. ceased doing business and filed Articles of Dissolution with the Virginia State Corporation Commission.

Maurag has owned and operated Doraldo Ristorante Italiano continually since purchasing it in 2001. Three years after the acquisition, Maurag filed an application with the USPTO to register the service mark DORALDO. As part of that application, Maurag filed a sworn affidavit pursuant to 15 U.S.C. § 1051(a)(3) averring that: 1) Maurag "believes" that it is the owner of the mark being registered; and 2) that "to the best of [Maurag's] knowledge and belief, no other person has the right to use such mark in commerce." *Id.* § 1051(a)(3)(A), (a)(3)(D). Alosa and counsel for Maurag prepared the application and affidavit. On July 19, 2004, the USPTO allowed the mark DORALDO for publication and registration and issued it on the USPTO's Principal Register with Registration No. 2,970,717. At some point after the USPTO issued the registration for the mark, Charlie Messina, Mr. Bertuglia's old business partner, became a partner in Maurag. Maurag has since opened a second Doraldo's restaurant in Kilmarnock, Virginia.

In the years since selling Doraldo Ristorante Italiano, Mr. Bertuglia organized several different Virginia companies, including defendants Doraldo's Inc., Foxhunter Grill, Inc., and Pelican Cove LLC. Through these companies, Mr. Bertuglia owns and operates three restaurants: Tuscany Ristorante Italiano, Foxhunter Grill, and Pelican Cove. Mr. Bertuglia's new restaurants are in the same general geographic area as Maurag's two Doraldo's locations, and some of Mr. Bertuglia's restaurants serve dishes similar, if not identical, to the dishes served in Maurag's restaurants. Mr. Bertuglia advertises his restaurants in various local papers and tourism magazines. Many of these advertisements contain some variation of the phrases "former owner of Doraldo's in Williamsburg" or "original owner of Doraldo."

## II. Analysis and Conclusions of Law

### A. Trademark Infringement

■ To prove trademark infringement under the Lanham Act, a plaintiff must prove that: 1) it owns the trademark; 2) the defendant used the trademark; 3) the use occurred in commerce; 4) the defendant used the trademark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and 5) the defendant used the trademark in a manner likely to confuse customers. 15 U.S.C. § 1114; *Lamparello v. Falwell,* 420 F.3d 309, 313 (4th Cir.2005). Maurag's trademark infringement claim fails on the last element of this test, *i.e.,* likelihood of customer confusion.[1]

The registered owner of a mark may prevent another's use of the mark only if that use is "likely to cause confusion, or cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). The standard of inquiry is whether the alleged infringing use is "likely to confuse the ordinary consumer as to the source or sponsorship of the goods." *Anheuser–Busch, Inc. v. L & L Wings, Inc.,* 962 F.2d 316, 318 (4th Cir.1992). Courts deciding whether there is a likelihood of confusion among the competing uses of the mark must consider seven factors: (1) the strength or distinctiveness of the mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities that the two parties use in their businesses; (5) the similarity of the advertising the two parties use; (6) the defendant's intent; and (7) actual confusion. *Lone Star Steakhouse & Saloon v. Alpha of Va., Inc.,* 43 F.3d 922,

---

**1.** The first element, ownership of the mark, is    discussed *infra,* Part II.B.

933 (4th Cir.1995); *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir.1984). Each factor is of varying strength and relevance depending upon the case. *Lone Star*, 43 F.3d at 933.

In less legalistic terms, Maurag must prove that the contested advertisements are likely to cause customers to patronize one of Mr. Bertuglia's restaurants (a) thinking that they are going to Doraldo Ristorante Italiano, or (b) thinking that the Maurag and Bertuglia restaurants are affiliated. A coined mark, such as DOR-ALDO, is presumed inherently strong. *See, e.g., Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 713 (3d Cir.2004) (discussing the weight of coined and fanciful marks); 2 *McCarthy on Trademarks and Unfair Competition* §§ 11:5, 11:8 (4th ed.) (defining "coined mark" and its relative strength as a mark). Moreover, the litigants offer similar goods and services in similar facilities. On the other hand, there was no admissible evidence of actual confusion.[2] Maurag instead asserts that the phrases "former owner of Doraldo's" or "original owner of Doraldo's" are inherently confusing.

The Court is not persuaded that the accused phrases are inherently likely to cause confusion as to the source of the goods or services. The advertisements clearly distinguish between Mr. Bertuglia's restaurants and Doraldo's. The use of the words "former" and "original" imply, in this unique situation, that there is no current affiliation and that the goods or services are distinct. In addition, the evidence suggested that Mr. Bertuglia did not use the accused phrases for the purpose of luring customers into his restaurants under false pretenses. Rather, Mr. Bertuglia intended to convey that if a customer liked Doraldo Ristorante Italiano in the past, that customer may also like his new restaurants. The prefatory words "former" and "original" effectively serve as disclaimers that guard against customer confusion, rather than ruses to create confusion. *Cf. Sunsport, Inc. v. Barclay Leisure Ltd.*, 984 F.Supp. 418, 421–22 (E.D.Va.1997) (discussing use of disclaimers to avoid confusion); *Yankelovich, Skelly & White, Inc. v. White, Yankelovich, Skelly Consulting Group, Inc.*, 1989 WL 115848, at *9, 1989 U.S. Dist. LEXIS 11468, at *15 (S.D.N.Y. Sept. 27, 1989) (same).[3] The Court therefore **FINDS** that Maurag did not meet its burden of proving likelihood of confusion and **DISMISSES** the trademark infringement claim.

## B. Cancellation of the Trademark Due to Fraud

▇ As noted above, Mr. Bertuglia has petitioned via counterclaim for cancellation or amendment of the DORALDO trademark pursuant to 15 U.S.C. § 1064. To

---

**2.** The only testimony close to showing actual confusion was inadmissible hearsay from Mr. Alosa that customers had told him that they thought Doraldo's was affiliated with Mr. Bertuglia's restaurants.

**3.** A party may make nominative use of another's mark to identify himself or his past activities. Nominative use is the practice of referring to another's mark to help describe one's own product or service. *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 218 (3d Cir.2005). For example, "Michael Jordan would not [infringe or] dilute the name 'Chicago Bulls' by referring to himself as a former member of that team." *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 806 (9th Cir.2002).

In the Third Circuit, nominative use is an affirmative defense to a *prima facie* case of likelihood of confusion, similar to the fair use defense. *Century 21*, 425 F.3d at 221. In the Ninth Circuit, an assertion of nominative use gives rise to a modified likelihood of confusion analysis. *Playboy*, 279 F.3d at 801. The Court need not choose between the Third Circuit approach and the Ninth Circuit approach due to Mr. Bertuglia's use of disclaimers.

prevail on such a petition, Mr. Bertuglia must prove by clear and convincing evidence that Maurag "knowingly made false, material misrepresentations of fact and intended to deceive the" USPTO in Maurag's application. *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 420 (4th Cir.1998) (citations omitted). As part of the registration process, a trademark registrant must affirm, under oath, that he "believes" himself to be the owner of the mark sought to be registered and that "to the best of his knowledge and belief" no other person has the right to use the mark in commerce. 15 U.S.C. § 1051(a)(3)(A), (A)(3)(D). "The oath is phrased in terms of a subjective belief, such that it is difficult to prove fraud so long as the affiant or declarant has an honestly held, good faith belief." *Resorts of Pinehurst*, 148 F.3d at 420 (emphasis, citations, and internal ellipses omitted).

### 1. *No Other Person Using the Mark in Commerce*

Mr. Bertuglia's first claim of fraud arises out of his contention that Maurag knew, or should have known, that another Doraldo Ristorante Italiano existed at the time it averred under oath that no other person had the right to use the mark in commerce. Mr. Bertuglia bases his allegation on the fact that Maurag's principal owner, Frankie Alosa, was present in the Williamsburg restaurant in 1999 and 2000 while Mr. Bertuglia and Mr. Messina were in the process of opening a second Doraldo's in Newport News, Virginia.[4] Mr. Bertuglia and Mr. Messina ended up selling this Doraldo's to Gio–Nikki Enterprises, Inc. in 2000. The restaurant operated under the name "Doraldo Ristorante Italiano" pursuant to a license granted in con-

nection with the sale. At some point after Maurag applied for the DORALDO service mark in 2004, the Newport News restaurant changed names and then closed.

As a preliminary matter, what Maurag should have known is irrelevant for purposes of trademark cancellation. Mr. Bertuglia must prove that Maurag actually knew that the other restaurant was legally using the name Doraldo's at the time of registration. To this end, Mr. Bertuglia introduced evidence that Mr. Alosa was "around" when the Newport News store was built and then sold, that he was seen speaking with Gio–Nikki's owners, and that Mr. Alosa was once seen at the Newport News Doraldo's.

The first two pieces of testimony are far from conclusive. Even if true, Mr. Alosa's presence in the same place at the same time in 2001 as Gio–Nikki's owners does not necessarily mean he knew that they were operating a restaurant called Doraldo's in 2004. On the other hand, Mr. Alosa's actual presence at the Newport News Doraldo's would cast significant doubt on his later sworn affirmation that no one else was using or had the right to use the mark in commerce. However, the testimony placing Mr. Alosa at the Newport News Doraldo's was lacking in specificity, and thus inconclusive of whether Maurag actually knew that someone else had a legal right to use the mark. Finally, because Mr. Messina did not become a partner in Maurag until after Maurag registered for the mark, any knowledge he had regarding the Newport News Doraldo's may not be imputed to Maurag at the time of registration.

While Maurag probably should have known, and indeed may have known, of the

---

4. It is unclear whether Alosa's presence at the restaurant was for purposes of observation and due diligence or whether he was actually working at the restaurant. There was testimony to support both alternatives. However, defendants produced no IRS W–2 forms or pay stubs to support the claim that Alosa was actually employed by Bertuglia's company. In any event, the distinction is immaterial.

Newport News Doraldo's when it registered for the trademark, the Court **FINDS** that Mr. Bertuglia has failed to prove by clear and convincing evidence, *Resorts of Pinehurst,* 148 F.3d at 420, that Maurag actually intended to deceive the USPTO when it registered for the DORALDO trademark. Were the applicable standard a preponderance of the evidence, the Court might have made a different finding.

### 2. *Exclusive Owner of the Mark*

■ Mr. Bertuglia's second allegation of fraud concerns Maurag's affirmation that it was the owner of the DORALDO mark.[5] Mr. Bertuglia asserts that Maurag was nothing more than a licensee of the trade name "Doraldo" by virtue of the APA language quoted above. If Mr. Bertuglia is correct, and the APA language simply granted a non-exclusive license, Maurag was not the owner of the mark at the time of registration in 2004.[6] *See* 3 *McCarthy on Trademarks and Unfair Competition* § 18:43 (4th ed.) (discussing rights of licensees).

Disputed ownership, standing alone, does not necessarily lead to cancellation of a service mark registration. The critical question is whether Maurag had a good faith belief at the time of application for registration that it owned the trade name and service mark DORALDO. Maurag could easily have held such a belief because the assignment language in the APA

is arguably ambiguous. The "to be used exclusively at" phrase could be read as "to be used only at," implying that the seller is creating a location-specific license and reserving to itself the right to use the trade name elsewhere. This construction is bolstered by the fact that the APA does not expressly convey the goodwill associated with the trade name and service mark DORALDO. *See generally* 3 *McCarthy on Trademarks and Unfair Competition* § 18:17 (4th ed.) (discussing assignments in gross). On the other hand, the operative language could be read as "to be used exclusively by the buyer at," implying that the buyer has the sole right to use the mark.[7] This construction is bolstered by the fact that Mr. Bertuglia dissolved Doraldo Restaurant Inc. immediately after the sale without making any provision for new ownership of its trade name and service mark assets. This suggests Mr. Bertuglia believed that he had conveyed all right, title, and interest in the assets.

The arguable ambiguity in the APA prevents Mr. Bertuglia from proving fraudulent intent solely from the face of the contract, and there was no convincing parol evidence regarding the parties' mutual intent when entering into the transaction. The Court therefore **FINDS** that Mr. Bertuglia has not proved by clear and convincing evidence that Maurag knew it was not the owner of the mark at the time of registration.

---

**5.** To the extent this latter species of fraudulent procurement was not specifically pled in the counterclaim, the Court **GRANTS** Mr. Bertuglia's motion to amend the pleadings to conform to the evidence. Fed.R.Civ.P. 15(b).

**6.** Under this interpretation of the APA, upon dissolution of the corporation, ownership of the mark reverted by operation of law to Mr. Bertuglia (and perhaps also Mr. Messina) absent contrary direction in the Articles of Dissolution. Va.Code Ann. §§ 13.1–742 to –750. Mr. Bertuglia's non-use of the mark thereafter may operate as an abandonment. It is also

possible, depending upon one's interpretation of the APA, that Mr. Bertuglia is a senior user of the mark and still retains certain common law rights to the mark. *See Marshak v. Treadwell,* 240 F.3d 184, 198 (3d Cir.2001). None of these issues are before the Court for decision.

**7.** The Court does not intend this discussion to be a formal, binding finding of ambiguity in the APA. Rather, the Court intends only to show that an arguable ambiguity can lead a party to act in good faith.

### III. *Conclusion*

For the reasons set forth above, the Court **FINDS** in favor of defendants on Maurag's trademark infringement claim and **DENIES** defendant Bertuglia's petition to cancel Maurag's trademark. This matter is therefore **DISMISSED WITH PREJUDICE.**

While this action is concluded, the question of who actually has the right to use the DORALDO service mark outside of the Williamsburg location remains unresolved. This issue is better negotiated than litigated. Messrs. Bertuglia and Alosa are savvy businessmen and accomplished restaurateurs who can reach an understanding while enjoying a fine vintage (whether red, white or rose) in someone's Italian restaurant.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**